✎JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

See Attached Sheet

**(b)** County of Residence of First Listed Plaintiff _____
    (EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

See Attached Sheet

## DEFENDANTS

Merscorp, Inc., and Mortgage Electronic Registration Systems, Inc.

County of Residence of First Listed Defendant   Reston, Virginia
    (IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
    LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1   U.S. Government
      Plaintiff
- ☐ 3   Federal Question
      (U.S. Government Not a Party)
- ☐ 2   U.S. Government
      Defendant
- ☒ 4   Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
28 U.S.C. § 1332 (a)(1)

Brief description of cause:
Violations related to 21 Pa. STat. §351 (2011) and Pennsylvania Common law

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☑ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE

11/7/11

SIGNATURE OF ATTORNEY OF RECORD

_signature_

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

MONTGOMERY COUNTY, PENNSYLVANIA, RECORDER OF DEEDS, by and through NANCY J. BECKER, in her official capacity as the Recorder of Deeds of Montgomery County, Pennsylvania, on its own behalf and on behalf of all others similarly situated,

        Plaintiff,

MERSCORP, INC., and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC,

        Defendants.

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Office of Recorder of Deeds, One Montgomery Plaza 3rd fl., Swede and Airy Streets

Address of Plaintiff: __P.O. Box 311, Norristown, PA 19404-0311__

Address of Defendant: __1818 Library Street, Suite 300, Reston, Virginia 20190__

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☒

Does this case involve multidistrict litigation possibilities?   Yes☒  No☐

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

| A. *Federal Question Cases:* | B. *Diversity Jurisdiction Cases:* |
|---|---|
| 1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts | 1. ☐ Insurance Contract and Other Contracts |
| 2. ☐ FELA | 2. ☐ Airplane Personal Injury |
| 3. ☐ Jones Act-Personal Injury | 3. ☐ Assault, Defamation |
| 4. ☐ Antitrust | 4. ☐ Marine Personal Injury |
| 5. ☐ Patent | 5. ☐ Motor Vehicle Personal Injury |
| 6. ☐ Labor-Management Relations | 6. ☐ Other Personal Injury (Please specify) |
| 7. ☐ Civil Rights | 7. ☐ Products Liability |
| 8. ☐ Habeas Corpus | 8. ☐ Products Liability — Asbestos |
| 9. ☐ Securities Act(s) Cases | 9. ☐ All other Diversity Cases |
| 10. ☐ Social Security Review Cases | (Please specify) |
| 11. ☐ All other Federal Question Cases (Please specify) | |

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, __Joseph C. Kohn, Esquire__, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: __November 7, 2011__   _____   __36565__
                             Attorney-at-Law                  Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __November 7, 2011__   _____   __36565__
                             Attorney-at-Law                  Attorney I.D.#

CIV. 609 (6/08)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| **SEE ATTACHED SHEET** | : | CIVIL ACTION |
| v. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.) ( **X** )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )

| | | |
|---|---|---|
| **November 7, 2011** | *[signature]* | **Plaintiff and the Plaintiff Class** |
| **Date** | **Attorney-at-law** | **Attorney for** |
| **(215) 238 1700** | **(215) 238- 1968** | jkohn@kohnswift.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MONTGOMERY COUNTY, PENNSYLVANIA, RECORDER OF DEEDS, by and through NANCY J. BECKER, in her official capacity as the Recorder of Deeds of Montgomery County, Pennsylvania, on its own behalf and on behalf of all others similarly situated,

                        **Plaintiff,**

     **vs.**

MERSCORP, INC., and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC,

                        **Defendants.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MONTGOMERY COUNTY,
PENNSYLVANIA, RECORDER OF
DEEDS, by and through NANCY J.
BECKER, in her official capacity as the
Recorder of Deeds of Montgomery County,
Pennsylvania, on its own behalf and on
behalf of all others similarly situated,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action

NO._____

JURY TRIAL DEMANDED

              **Plaintiff,**

   **vs.**

MERSCORP, INC., and MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC,

           **Defendants.**

## CLASS ACTION COMPLAINT

Plaintiff, The Montgomery County, Pennsylvania, Recorder of Deeds Office, by and through Nancy J. Becker in her official capacity as the Recorder of Deeds of Montgomery County, Pennsylvania, on behalf of itself and all other similarly situated Pennsylvania County Recorder of Deeds Offices ("Plaintiff"), submits this Complaint (the "Complaint") against MERSCORP, Inc., and Mortgage Electronic Registration Systems, Inc.  The allegations are asserted on information and belief after due investigation, except as to those matters which relate to Plaintiff and its own acts, which are asserted on personal knowledge.

## I.  NATURE OF THE ACTION

The Montgomery County, Pennsylvania, Recorder of Deeds office, by and through Nancy J. Becker, the Montgomery County Recorder of Deeds, brings this action on its own behalf and on behalf of a class of all other similarly situated Pennsylvania County Recorder of Deeds Offices (collectively, the "Counties" or the "Class") against MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc. ("Defendants" or "MERS") to remedy the Defendants' illegal scheme to avoid paying fees associated with properly recording mortgages and mortgage assignments in violation of Pennsylvania law.

Defendants, together with the major financial institutions which created the MERS Defendants and benefit from their operation, created and maintain a private system designed to avoid recording mortgage assignments and paying the associated fees.  MERS allows the mortgage industry to "register" property transfers on its website.  Members, who are part of the mortgage industry, pay membership dues and per-transaction fees to MERS.  In exchange, MERS members are allowed to "record" property transfers and avoid the county recording system in Pennsylvania and throughout the country.  Through the Defendants' electronic recording system MERS engaged and continues to engage in deceptive practices that create confusion amongst property owners, damage the integrity of Pennsylvania's land records, and deny Plaintiff and the Class millions of dollars in uncollected fees.

By creating and maintaining a system that lacks corporate controls, oversight, and reliability, Defendants systematically circumvented Pennsylvania recording law for which Plaintiff and the Class seek damages and injunctive relief.

## II.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action under and pursuant to the Court's diversity jurisdiction. 28 U.S.C. § 1332(a)(1). Defendants are citizens of Delaware and Virginia. Plaintiff is a citizen of Pennsylvania.

2.    Venue in this Judicial District is proper under 28 U.S.C. § 1391(a)(2). Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claims occurred within this District.

## III.   PARTIES

3.    Plaintiff is The Montgomery County, Pennsylvania, Recorder of Deeds Office, by and through Nancy J. Becker in her official capacity as the Recorder of Deeds of Montgomery County. Plaintiff brings this action on its own behalf and on behalf of a class of all other similarly situated Pennsylvania County Recorder of Deeds Offices.

4.    Defendant MERSCORP, Inc. ("MERSCORP") is a Delaware corporation that maintains it principal place of business at 1818 Library Street, Suite 300, Reston, Virginia 20190.

5.    Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), a wholly-owned subsidiary of Defendant MERSCORP, is a Delaware corporation and maintains its principal place of business at 1818 Library Street, Suite 300, Reston, Virginia 20190.

6.    Defendants have at all times relevant to this litigation conducted business in the Commonwealth of Pennsylvania including in this Judicial District.

7.    Plaintiff reserves the right to join Defendants predecessors in interest after Plaintiff conducts sufficient discovery. Moreover, Defendants may acquire other entities or may

divest itself of some operation and form new entities.  Therefore, Plaintiff reserves the right to join new or different entities after sufficient discovery has been undertaken.

### IV.   FACTUAL BACKGROUND

#### A.   Local Recording Laws

8.   As early as the 17th Century, American Colonies passed property recordation statutes, requiring a mortgagee (the party who makes the loan) to record mortgages or assignments or risk losing its ability to enforce the contract against a subsequent purchaser for value.

9.   The purpose of these recording statutes are, in the words of one commentator, "to prevent disputes over property rights and to facilitate the use of land as collateral by creating a transparent public record that provides certainty in private bargains." Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1364-65 (2010).  Specifically, mortgage lenders, when contemplating offering a loan secured by land, use recording indexes compiled by county recorders to ensure that debtors have not already sold the land, granted a mortgage to someone else, and that there are no liens on the property.

10.   All fifty states and the District of Columbia retain recording statutes similar to their colonial predecessors.  Pennsylvania adopted its first recording act in 1717, which remains in force today.

11.   Pennsylvania law requires that "all deeds, conveyances, contracts, and other instruments of writing . . . shall be recorded in the office for the recording of deeds in the county where such lands . . ." are located.  21 Pa. Stat. § 351 (2011) (emphasis added).  Unrecorded mortgages and mortgage assignments "shall be adjudged fraudulent and void as to any

subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office . . ." 21 Pa. Stat. § 351 (2011).

12.     The Pennsylvania Supreme Court has confirmed that Pennsylvania law "recognizes mortgages as acting . . . as <u>conveyances.</u>" *Pines v Farrell*, 577 Pa. 564, 848 A.2d 94, 100 (2004)(emphasis added).

13.     From this conclusion, the Court stated that "it logically follows that an assignment of the mortgagee's rights likewise effects a conditional transfer of the subject property to the assignee." *Id.*

14.     Therefore, under Pennsylvania law a <u>conveyance</u> or property transfer includes "mortgage assignments" which are subject to the recordation statute. *Id.* at 101.

**B.     The Mortgage Electronic Registration Systems, Inc.**

15.     MERS was created in the mid-1990s by the mortgage industry to facilitate the growing industry practice of selling residential mortgages for securitization in complex investment vehicles known as mortgage backed securities ("MBS"). MERS also was formed for the express purpose of avoiding fees traditionally due to county recorders of deeds when sales or assignments of mortgages were made. In 1997, MERS' former CEO said that "MERS is owned and operated by and for the mortgage industry" and stressed that its express purpose was to circumvent recording assignments and paying fees to recorders of deeds in connection with such recording. In filings from this year, MERS has affirmed that it exists to "eliminate the need for frequent, recorded assignments of subsequent transfers." As a result, MERS, and the mortgage industry it serves, have failed to pay tens of millions of dollars in fees to the county offices and vitiated the time honored public recording system.

16.     Although MERS has no employees it has 5,000 member institutions and 20,302 certifying officers. Approximately 65 million mortgage loans in the United States name MERS

as original mortgagee and nominee of a lender.  There are over 130,000 mortgages recorded in

Montgomery County, Pennsylvania naming MERS as the mortgagee since 2004 alone.  There

are currently over 31 million active loans registered on the MERS system.  To become a

member, a mortgage company can purchase the Defendants' corporate seal for their signing

officers at a cost of $25 each.  Thereafter, member companies can have their employees interact

with other MERS members and transfer mortgages.

17.     MERS purports to maintain a computer database designed to track servicing and

ownership rights of mortgage loans throughout the United States.  MERS certifying officers are

permitted to record changes in ownership of notes with an "electronic handshake."  Certifying

officers are officials from MERS member institutions that can enter transactions in MERS'

system.  The electronic handshake occurs on the MERS' system after a certifying officer of one

party enters the transaction and a certifying officer of the other party confirms the transaction.

MERS members are not required to update the database.  In deposition testimony, MERS'

former CEO said that the system "is capable of being used to track [beneficial ownership

interests] if the members utilize it for that reason."  When pressed on whether MERS expects

financial institutions to update the MERS database regarding changes in loan ownership, the

former CEO replied, "not so much . . ."

18.     One observer explained how individuals become MERS certifying officers:

> "MERS invites financial companies to enter names of their own
> employees into a MERS webpage that then automatically regurgitates
> boilerplate corporate resolutions that purport to name the employees of
> other companies as certifying officers of MERS. These certifying officers
> also take job titles from MERS and stylize themselves as either assistant
> secretaries or vice presidents of MERS . . . These employees of the
> servicers, debt collectors, and law firms sign documents pretending to be
> vice presidents or assistant secretaries of MERS, Inc. even though neither
> MERSCORP, Inc. nor MERS, Inc. pays any compensation or provides
> benefits to them. Astonishingly, MERS "vice presidents" are simply

6

paralegals, customer service representatives, and foreclosure attorneys employed by other companies.  MERS even sells its corporate seal to nonemployees on its internet web page for $25.00 each. Ironically, MERS, Inc. — a company that nominally owns 60% of the nation's residential mortgages — does not have any of its own employees but still purports to have over twenty thousand assistant secretaries and vice presidents."

Christopher Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory* (Sept. 19, 2010),

http://papers.ssrn.com/sol13/papers.cfm?abstract_id=1684729; then follow "One-Click Download."

19.     In deposition testimony, Jeffrey Stephan, who is a MERS' certifying officer revealed that he executed roughly 10,000 affidavits a month.  Mr. Stephan held two MERS job titles, received no training from MERS, received no compensation from MERS, did not attend board meetings of MERS, and did not report to anyone at MERS.

20.     Recently, in response to MERS' poor practices, several federal agencies entered a consent decree with MERSCORP, Inc., which stated that MERS and MERSCORP:

(a)  have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members; and

(b)  have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members.

Because of this conduct, the consent order states, "MERS and MERSCORP engaged in unsafe or unsound practices that expose them and Examined Members to unacceptable operational, compliance, legal, and reputational risks." *MERSCORP. Inc., and the Mortgage Elec. Sys., Inc., Reston, Va.*, OCC No. AA-EC-11-20, p. 5 (April 12, 2011), available at:

http://www.scribd.com/doc/61286937/OCC-Consent-Order-MERS

21.     MERS' avoidance of filing mortgage assignments resulted in the loss of millions of dollars to county governments. In the Commonwealth of Pennsylvania alone, Plaintiff estimates that over $100 million was lost in recording fees. Recording fees are allocated to maintain the county recorders' records as well as fund other county services such as children and youth services, veterans affairs, health centers, and housing assistance.

22.     State and local entities across the nation are bringing suit to rein in Defendants' deceptive conduct. Recently, The Delaware Attorney General's Office brought suit against MERS for deceiving the public, stating that Defendants designed a company with few internal controls, foreclosing on mortgages in which they do not have authority to act, and assigning mortgages without the authorization to do so. Del. comp. in *State of Delaware v. MERS et al. in the Court of Chancery of the State of Delaware*, Case No. 6987 (Oct. 27, 2011) at para. 71, 73,75, 83. Delaware experiences the same deceptive trade practices that plague Pennsylvania. As noted in the Delaware Complaint, MERS engaged and continues to engage in deceptive practices that "sow confusion among consumers, investors, and other stakeholders in the mortgage finance system, damage the integrity of Delaware's law records, and lead to unlawful foreclosure practices." *Id.* at para. 3. In addition, lawsuits have been filed against MERS on behalf of county recording offices in Kentucky, Ohio, California, and Tennessee.

C.    **Securitization**

23.    Beginning in the 1990s, securitization of mortgages became more common. Mortgage lenders would originate as many residential mortgage loans as possible and then sell them to various banks and financial institutions.  Those banks and financial institutions would pool the mortgages into trusts for sale to investors as mortgage-backed securities.

24.    To securitize a mortgage several assignments must be made: (A) The mortgage lenders as the originating lender sell mortgages (promissory note and mortgage documents) to a sponsor.  The sponsor is a special purpose entity affiliated with a bank or financial institution. (B) The sponsor initiates the securitization by transferring (i.e. assigning) the mortgage to a depositor.  (C) The depositor then transfers the mortgage to a "special purpose vehicle" (usually a trust) where the mortgages are then sold to investors.

25.    The securitization process requires three assignments.  Under Pennsylvania law, these assignments are conveyances and must be recorded.

26.    In reality, members of MERS might record the initial mortgage but as their practice, fail to record all subsequent assignments.  Many such mortgages have been sold and assigned on multiple occasions, but there is no recording of these conveyances in the public record.

27.    MERS members often only record a mortgage assignment in county recording offices when they are attempting to assign the mortgage from MERS to another entity in connection with initiating foreclosure proceedings.  Before this final assignment takes place there might be two, three, or a dozen assignments that are not recorded.  The final assignment from MERS to a member of the mortgage industry typically occurs prior to a terminating event- foreclosure or satisfaction of the mortgage.

28.     When this final assignment takes place, Defendants have already allowed MERS' members to circumvent recording multiple assignments.  This creates gaps in the record of ownership.  While the foreclosing entity claims to hold title to the property their rights to the property are in question.

29.     Gaps in title cloud ownership, increase questions about foreclosure procedures, and raise doubts on the accurate satisfaction of mortgages, all of which undermine the time honored recording requirements in Pennsylvania and throughout the country.

**V.      CLASS ACTION ALLEGATIONS**

30.     Plaintiff requests that the Court certify this case as a Class Action pursuant to Fed. R. Civ. P. 23.

31.     Plaintiff seeks to certify a Class of "All Pennsylvania counties where Defendants from 1995 to the present, have failed to record mortgage assignments and pay all associated recording fees for such recording of mortgages."

32.     The Plaintiff Class meets the prerequisites for the maintenance of a Class Action in that:

> (a)  The Plaintiff Class is so numerous that joinder of all Class Members is impracticable. The practices complained of caused damage to most if not all of Pennsylvania's 67 counties;

> (b)  The claims of the named party are common of the claims or of the class, including whether Defendants can lawfully create an alternative mortgage recording system that prevents the recording of mortgage assignments;

(c)   The claims of the named party are typical of the claims of the class. Whether Defendants violated Pennsylvania law requiring the proper recording of mortgage assignments is typical of all class members and ensures that the interests of absent class members will be fairly represented;

(d)   The representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Fed. R. Civ. P. 23. The attorneys for the representative parties are skilled in class action matters. There is no conflict of interest between the parties who are uniform in their pursuit of damages for Defendants alleged violations of Pennsylvania law. Through the course of this action, Plaintiff has adequate financial resources to ensure that the interests of the class will not be harmed.

(e)   A class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Fed. R. Civ. P. 23. The class consists of common questions of law or fact which predominate over any questions affecting only individual members: (1) whether Defendants violated 21 P.S. § 351; (2) whether Defendants conspired to violate 21 P.S. § 351; (3) whether Defendants were unjustly enriched by their conduct; (4) whether the Plaintiff is entitled to an order declaring that these practices, as described above, are in violation of 21 P.S. § 351; and (5) the appropriate amount of damages and other relief to be granted to Plaintiffs. Due to the size of the

class, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class. Individual adjudications would confront the Defendants with incompatible standards of conduct. This class action will adjudicate claims of individual members of the class, which as a practical matter would be dispositive of the interests of other members of the class not a party to the suit. Individual litigation magnifies the delay and expense to all parties and drains judicial resources. Finally, the equitable and declaratory relief sought asking Defendants to refuse to act on certain grounds is applicable to the entire class.

33.    The Plaintiff contemplates the eventual issuance to the proposed Class Members of a notice setting forth the subject and nature of the instant action.

## CAUSES OF ACTION

## COUNT I - NEGLIGENT AND/OR WILLFUL VIOLATION OF  21 P.S. § 351

34.    The Plaintiff hereby realleges and incorporates the allegations contained in paragraphs 1-33 above as if fully set forth herein.

35.    The Defendants knew or showed reckless disregard for duties they had under the law. The intent of the recording statute was to protect the residents of Pennsylvania from the execution of fraudulent deeds and to maintain a public and accurate record of real property ownership and encumbrances. Defendants' disregarded the statute, deliberately failing to

properly record mortgages and to pay the associated recording fees. Due to Defendants direct

actions the intent of the statute was substantially frustrated, causing Plaintiff and the Class a loss

of millions of dollars in recording fees and rendering the public recording system inaccurate and

incomplete.

36.     As a proximate result of the Defendants' negligent and willful violations

of 21 P.S. § 351, Plaintiff and the Class were damaged in an amount to be ascertained at trial.

## COUNT II - CIVIL CONSPIRACY TO VIOLATE 21 P.S. § 351

37.     The Plaintiff hereby realleges and incorporates the allegations contained in

paragraphs 1-36 above as if fully set forth herein

38.     Defendants in this action have conspired with other unnamed co-conspirators to

violate the provisions of 21 P.S. § 351.

39.     Defendants acted in combination to create an alternative mortgage recording

system, outside of public view, with the specific purpose of unlawfully failing to record

assignments of mortgages and paying the associated fees.

40.     As a proximate result of the Defendants' Conduct, Plaintiff and the Class were

damaged in an amount to be ascertained at trial.

## COUNT III - UNJUST ENRICHMENT

41.     The Plaintiff hereby realleges and incorporates the allegations contained in

paragraphs 1-40 as if fully set forth herein.

42.     Based upon Defendants' wrongful conduct, Plaintiff and the Class seek to recover

in equity monies held by Defendants that belong to Plaintiff and the Class.

43.     Plaintiff conferred benefits on the Defendants. The Defendants appreciated those

benefits. Defendants retention of those benefits without payment will produce an inequitable

result. Defendants enjoyed the benefit of avoiding the payment of recording fees. These benefits amounted to millions of dollars in money due to the counties. The plaintiff, under Pennsylvania law, has the authority to collect these overdue fees. In addition, when Defendants circumvented the county recording system they were able to benefit from the appearance of holding good title on thousands of properties. Without recording these assignments Plaintiff is denied an accurate accounting of property transfers throughout Pennsylvania. Defendants' acceptance of these benefits and failure to compensate Plaintiff resulted in an unconscionable bargain.

44.     Prior to Defendants' actions, the recording indexes of the counties provided a transparent public record that promoted open and vibrant commercial activity by enabling potential mortgage purchasers to know with certainty whether they could obtain clear title to land. Recording the assignments will assist in clearing title to the relevant properties. The Plaintiff and the Class is entitled to all such monies based on the general principles of equity and good conscience.

45.     Plaintiff and the Class seek equitable remedies to prevent the unjust enrichment of Defendants by causing payment to Plaintiff and the Class of all mortgage assignment fees wrongfully avoided by the Defendants in addition to interest, attorneys' costs and fees, and, exemplary damages as allowed by law and equity.

## COUNT IV- DECLARATORY JUDGMENT AND PERMANENT INJUNCTION FOR DEFENDANTS FAILURE TO RECORD MORTGAGE ASSIGNMENT WAS A VIOLATION OF 21 P.S. § 351

46.     The Plaintiff hereby realleges and incorporates the allegations contained in paragraphs 1-45 as if fully set forth herein

47.     This is an action against Defendants for a declaratory judgment pursuant to 28 U.S.C. § 2201 (2010) and for a permanent injunction.

48.     As a result of Defendants' actions, the Plaintiff and the Class are uncertain about the true holders of title to property because of unrecorded mortgage assignments.

49.     Plaintiff seeks clarification about the assignment of mortgages to restore order to the property records in recorders' offices throughout the Commonwealth.

50.     The Plaintiff and the Class have a bona fide, actual, imminent, present and practical need for a declaration that deeds without properly recorded assignments are fraudulent, and that, if Defendants want to claim the benefits of the recording process and hold good title to properties, they must record all mortgage assignment and pay the accompanying fees.

51.     Defendants acted inequitably toward the Plaintiff and the Class by representing that all mortgages were properly recorded.  On the contrary, Defendants did not record the necessary mortgage assignments nor pay the counties for the services they provide, which are preconditions for enjoying the benefits offered by the county recording system.

52.     Defendants inequitable actions have, among other things, allowed them to save millions of dollars.

53.     The Plaintiff and the Class seek a declaratory judgment and a permanent injunction requiring Defendants to properly record in the public record, any and all assignments of mortgages known to MERS.

**JURY DEMAND**

Plaintiff hereby requests, on behalf of itself and the Plaintiff Class, a trial by jury on all issues so triable in this case.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following on behalf of itself and the Plaintiff Class:

(a)   For certification of the plaintiff class pursuant to Fed. R. Civ. P. 23;

(b)   For judgment against Defendants and in favor of Plaintiff and the Plaintiff Class on all causes of action asserted in this Complaint;

(c)   Compensatory damages;

(d)   Restitution and disgorgement of all monies due and owing to the Plaintiff and Plaintiff Class;

(e)   A declaration and determination by the Court of the rights, duties and remedies for the failure to record mortgage assignments and pay the accompanying fees;

(f)   A mandatory injunction requiring Defendants to record all prior assignments that Defendants failed to record in county record's offices throughout Pennsylvania;

(g)   For costs of suit incurred herein;

(h)   For pre-judgment interest to the extent allowed by law;

(i)   For penalties as alleged in this Complaint;

(j)   For reasonable and necessary attorneys' fees; and,

(k)  For such other and further relief as this Court may deem just and proper.

DATED:  November 7, 2011

Joseph C. Kohn, Esquire (PA. Bar No. 36565)
Robert J. LaRocca, Esquire
Jared G. Solomon, Esquire
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3304
Phone:  (215) 238-1700
Facsimile:  (215) 238-1968

Jeffrey D. Schaffer, Esquire
COOPER & SCHAFFER, LLC
815 Greenwood Avenue, Suite 22
Jenkintown, PA. 19046-2800
Phone:  (215) 887-6850

*Attorneys for Plaintiff and the Class*

17