**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONTGOMERY COUNTY, PENNSYLVANIA, RECORDER OF DEEDS, et al.,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MERSCORP, INC., et al.,<br>　　　　Defendants. | No. 11-cv-6968-JCJ |

### DECLARATION OF IRV ACKELSBERG, ESQ.

### Introduction

1. I am a licensed attorney and a member in good standing of the bars of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States Supreme Court. I am a partner in the Philadelphia law firm Langer Grogan & Diver, PC.

2. I received my B.A. from Haverford College in 1972 and my J.D., magna cum laude, from Rutgers University-Camden School of Law in 1976.

3. Since 1978, I have specialized in consumer law. I practiced for 30 years with Community Legal Services ("CLS") (1976-2006), the civil legal aid program serving Philadelphia, where I managed the North Philadelphia office and led the program's consumer law work. My practice at CLS was concentrated mostly in the area of consumer debt, unfair and deceptive practices, bankruptcy and mortgage foreclosure. At CLS, I had a diverse practice which included individual case representation, class action litigation, appeals, legislative and regulatory advocacy and drafting, and extensive lecturing, teaching and writing.

4. Much of my work at CLS during the last ten years of my tenure was concentrated in addressing the explosion of subprime mortgage lending that first appeared on a large scale, around 1996, and grew exponentially until the financial collapse of 2008. This work included a focus both on the front-end of mortgage origination practices and the back-end of mortgage servicing and foreclosure practices. My work in this area was multi-faceted. I had an extensive litigation docket which included, for example, the first decision interpreting the previously untested Home Ownership Equity Protection Act, *Newton v. United Companies Financial, Inc.*, 24 F. Supp. 2d 444 (E.D. Pa. 1998) and the Pennsylvania Superior Court decision that established the existence of equitable defenses to a foreclosure action brought to enforce a predatory mortgage transaction, *Green Tree Consumer Discount Co. v. Newton*, 909 A.2d 811 (Pa. Super. 2006). On two occasions, in 2001 and 2007, I was invited by the Banking Committee of the United States Senate to testify in hearings regarding predatory mortgage lending. In 2006 I testified as an expert in an investigation of mortgage broker fraud conducted by the Federal Reserve Board. Among the organizations that invited me to lecture on various aspects of the mortgage industry have been: the Federal Reserve Bank of Philadelphia, the Pennsylvania Housing Finance Agency, the NAACP, and the Pennsylvania Bar Institute. I also advised the Rendell Administration's Banking Department on predatory lending issues, including conducting trainings for staff and serving on an official Advisory Committee that assisted the Department in reorganizing itself to be more responsive to abuses in the marketplace and in developing new mortgage lending rules.

5. Particularly applicable to the instant legal matter, my work has led me to develop expertise on a number of issues relating to the mortgage industry, including: (a) the

mortgage financing system called "securitization" and the fragmentation of ownership resulting from this system; (b) the unique role of mortgage servicers in managing all aspects of a securitized mortgage; (c) the private mortgage recording system called the Mortgage Electronic Registration System, or "MERS", that the industry participants in mortgage securitization created and how MERS operates; (d) the Pennsylvania foreclosure process; and (e) a homeowner's right under the federal Truth in Lending Act to notice regarding the identity of the actual owner of a mortgage on his/her house.

6. I am the author of the recently published treatise on Pennsylvania foreclosure law, entitled *Residential Mortgage Foreclosure: Pennsylvania Law and Practice* (Bisel Co. 2012). *See* http://www.bisel.com/Descriptions/bk714.htm.

7. I have received several awards recognizing my professional achievements. I was the 2005 recipient of the National Consumer Law Center's Vern Countryman Award, awarded annually to a consumer lawyer, in recognition of "excellence and dedication in the practice of consumer law on behalf of low-income consumers." See http://www.nclc.org/aboutus/countryman-award.html. The Countryman Award is the most prestigious award in my field. In 2001, I was awarded the Andrew Hamilton Award by the Public Interest Section of the Philadelphia Bar Association for my lifetime contribution to public interest law in Philadelphia.

**The MERS System**

8. The MERS system at issue in this lawsuit harms homeowners directly. The key, relevant interest of a homeowner is the interest in knowing the identity of the entity that holds an interest in his or her property. In the event the owner wants to pay off or refinance that mortgage, he or she needs to pay and make a demand for satisfaction from the proper

party; even to make regular mortgage payments, the homeowner may wish to confirm the party on whose behalf those payments are being billed and collected. This can be especially confusing where the original lender sells and transfers the mortgage sometime after making the loan, because the homeowner will not know that this has occurred, nor will he or she know where to look to examine the documents and understand the history.[1]

9. Homeowners' interest in and need for information about who owns their mortgages becomes particularly pressing in the modern mortgage market, where virtually every mortgage will be sold and transferred during its life. Mortgages are traded as investment commodities in a secondary market known as the Residential Mortgage-Backed Securities ("RMBS") market. Because of the dominant role of securitization, mortgages are now rarely held as assets by the entities originating the loans, and those entities that are collecting payments and otherwise managing the mortgage accounts are doing so as servicing agents for different legal holders of the loan, not on their own behalf. In a typical RMBS transaction, mortgages are purchased from an originating lender, pooled with other mortgages, and packaged by an investment bank that divides the pooled income streams into fractional shares that are sold to investors as mortgage-backed securities. As a result of various legal requirements and bankruptcy-insulation strategies, an individual mortgage obligation being put into the pool of mortgages backing a

---

[1] Recent amendments by Congress to the Truth in Lending Act, see Helping Families Save Their Homes Act of 2009, Act of May 20, 2009, Pub. L. 111-22, addressed this homeowner right-to know the real owner of the mortgage by creating a new enforceable duty on the part of a mortgage assignee to disclose its acquisition directly to the homeowner at the time of the assignment. 15 U.S.C. §1641(g)(1). Of course, this federal action will not affect the thousands of mortgages that were previously transferred but which, according to the public records, remain confusingly in the name MERS as nominee of the original lender, nor did it address the lost public revenues at issue in this case.

particular securitization deal will, by necessity, go through multiple transfers of ownership.

10. Under the traditional rules for transferring mortgages, the duties of the county recorders of deeds serve to protect homeowners' interest in knowing who owns their mortgages. In Pennsylvania, the conveyancing rules governing transfers of interest in real estate require the execution, acknowledgment, and recording of an Assignment of Mortgage, forcing the assignee to reveal its ownership of the mortgage as a matter of public record. But the establishment of MERS fundamentally altered this system of public notice, hiding traditionally public information and documentation from both the homeowner and the public at large. This can best be explained by way of an example. In the case of a non-MERS mortgage that is transferred into a securitized trust, there will be of record two instruments: (a) the original mortgage between the property owner and the lender and (b) an Assignment of Mortgage that names as the assignee the commercial bank serving as trustee for a named securitization trust. On the other hand, in the case of a mortgage that is put into the MERS system, there will be only one instrument of record, that being an original mortgage which names as the mortgagee MERS "acting as nominee" of the original lender. When the actual obligation is transferred into the trust, no Assignment of Mortgage is executed and recorded. Instead, the name of the current owner of the mortgage is supposedly noted in the proprietary records of MERS that are accessible by MERS members but not the owner of the property subject to the mortgage.

11. MERS's current position—that the owner of debt is not required to be the same person as the record mortgagee—is contrary to the position that MERS member banks have repeatedly asserted in foreclosure proceedings in which I have represented low-income

homeowners. In many such cases, the plaintiff bank has filed an assignment from MERS to the bank shortly before instituting a foreclosure proceeding, which purports to convey not only the mortgage but also the note. This practice, which is problematic in any event because MERS never had any interest in the note, would serve no purpose if it were true, as MERS now alleges, that assignment of the mortgage but not the note were sufficient to complete the transfer of an interest in real property.

12. The public has an important interest in having access to a permanent repository of mortgages and assignments that allows members of the public to examine copies of the actual documents evidencing transfers of mortgage interests. This interest is advanced when mortgages and assignments are publicly recorded with county recorders of deeds, and thwarted when, as here, assignments are accomplished behind the screen erected by the MERS system.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 10/18/2013

Irv Ackelsberg