**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MONTGOMERY COUNTY, PENNSYLVANIA, :
RECORDER OF DEEDS, et al., :
        Plaintiff, :
         :
    v. : No. 11-cv-6968-JCJ
         :
MERSCORP, INC., et al., :
        Defendants. :

### DECLARATION OF SAMUEL W. MILKES, ESQ.

1. I am a licensed attorney and a member in good standing of the bar of Pennsylvania, and am admitted to practice in the Middle District of Pennsylvania and the Third Circuit Court of Appeals. I am a graduate of the Indiana University School of Law and Arizona State University. Since 2001, I have served as the Executive Director of the Pennsylvania Legal Aid Network, Inc. ("PLAN").

2. PLAN is a client-centered organization that provides leadership, funding, and support to improve the availability and quality of civil legal aid and direct legal services for low-income people and victims of domestic violence in Pennsylvania. PLAN is the state's coordinated system of organizations providing civil legal aid for those with nowhere else to turn. PLAN offers a continuum of critically needed legal information, legal advice and legal services through direct representation for low-income individuals and families who face urgent civil legal problems. These problems affect basic needs such as food, shelter, employment, consumer issues, health care, and family safety.

3. When state funding for legal services began in 1973, PLAN was developed as an intermediary between the Department of Public Welfare and its sub-grantees to ensure accountability. While PLAN continues to receive a modest appropriation directly from

the Department of Public Welfare, today it also administers state appropriated funds and grants from the Pennsylvania Interest on Lawyers Trust Account ("IOLTA") Board, including funds raised through the Pennsylvania Access to Justice Act ("AJA"). PLAN then monitors performance, coordinates training and technology, and helps develop new resources and programs for the entire network.

4. The funds collected through the AJA, which include both the fees for mortgages and for assignments, collected by county recorders of deeds and other recording and filing fees, are appropriated to the Administrative Office of the Pennsylvania Courts and, via the Court Administrator of Pennsylvania. These in turn are remitted to the IOLTA Board. The IOLTA Board then contracts with PLAN and other legal services organizations to distribute the AJA funds. A performance audit undertaken by the Legislative Budget and Finance Committee documented that over the history of the AJA through June 2010, legal services lawyers have handled 94,687 civil cases for low income people; more than half of these cases involve people's most pressing and personal needs: housing and family law.[1]

5. The dollars involved are substantial. During the 2011-12 fiscal year, IOLTA reported $10,760,087 from AJA fees, of which it granted $9,870,600 to PLAN.[2] These funds constituted approximately twenty-four percent of the total dollars received by Pennsylvania's legal service providers.[3] For the grant period July 1, 2013 through June

---

[1] http://lbfc.legis.state.pa.us/reports/2011154.pdf, S2-S3.
[2] Pennsylvania Interest on Lawyers Trust Accounts 2011-12 financial statements. http://www.paiolta.org/Operations/IOLTA%20Bd%20Audit%20FYE%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.pdf, p.13, note 5.
[3] http://lbfc.legis.state.pa.us/reports/2011154.pdf, S2-3.

30, 2014, the IOLTA Board has recommended, and the Supreme Court of Pennsylvania has approved, $10,248,844 in AJA grants to PLAN.[4]

6. Although the dollars committed to civil legal services for low-income people are substantial, the need is even greater. According to the performance audit cited above, only half of the eligible people who need civil legal services receive them, due to lack of funding.[5]

7. The recent recession has only exacerbated the need. Falling interest rates have significantly reduced the funding that legal services organizations receive from IOLTA moneys. As a result, PLAN's available revenue from IOLTA moneys to distribute throughout the Commonwealth plummeted from $9.2 million in fiscal year 2007-08 to $1.7 million in fiscal year 2009-10.[6] Though additional surcharges were added to all court filings in attempt to recover the loss, for fiscal year 2013-14 PLAN will receive only $1,877,847 in IOLTA moneys.[7]

8. The MERS system at issue in this case—which allows mortgagees to avoid fees for recording of assignments—significantly reduces the funds available to provide civil legal services to low-income Pennsylvanians.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 10/18/13

Samuel W. Milkes

---

[4] http://www.paiolta.org/Grants/2013-2014 GRANT AWARDS.pdf
[5] http://lbfc.legis.state.pa.us/reports/2011/54.pdf, at S2-S3.
[6] *Id.* at S3-S4.
[7] http://www.paiolta.org/Grants/2013-2014 GRANT AWARDS.pdf