**EXHIBIT H**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONTGOMERY COUNTY, PENNSYLVANIA, RECORDER OF DEEDS, by and through NANCY J. BECKER, in her official capacity as the Recorder of Deeds of Montgomery County, Pennsylvania, on its own behalf and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br><br>MERSCORP, INC., and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,<br><br>　　　　　　　　　　Defendants. | CIVIL ACTION<br><br>NO. 11-6968 |

### Declaration of Charles W. Proctor, III, J.D., C.L.T.P.

**A.　Qualifications**

1.　I have been a duly licensed attorney in the Commonwealth of Pennsylvania since 1976. I am also admitted to the Federal Court for the Eastern District of Pennsylvania, the United States 3rd Circuit Court of Appeals, and the United States Supreme Court in addition to various other federal courts. I am the senior managing partner of Proctor, Lindsay & Dixon, a firm that engages in and specializes in title insurance defense work and real estate litigation, real estate associated litigation, and providing expert opinions in other litigation.

2.　I received my Bachelor of Arts degree from Temple University in 1973 with a major in Political Science and a minor in Accounting. Subsequently, I attended the Delaware Law School of Widener University where I received a J.D. I am Board Certified by the Pennsylvania Land Title Institute as a Certified Land Title Professional.

3. In addition, I am the President of Industrial Valley Abstract Company and have been so since 1987. Industrial Valley Abstract Company is a duly licensed and authorized agent of Stewart Title Guarantee Company issuing policies of title insurance for both residential and commercial properties. IVAC was incorporated in the Commonwealth of Pennsylvania in 1965. During that time that my firm has handled literally tens of thousands of settlements and I have personally examined thousands of title searches and commitments.

4. As an Adjunct Professor of Law at Widener University School of Law, I teach Introduction to Real Estate and Title Search and Examination. I have also taught other courses as needed. I initiated the Title Search and Examination course as well as the Introduction to Real Estate course. I believe we are the only law school in the country to offer a full semester Title Search and Examination class.

5. During my career, I have testified before the National Association of Insurance Commissioners (NAIC), the Pennsylvania Insurance Department, the Property Records Industry Association, and have personally spoken to many state and federal legislators regarding the problems associated with the MERS system. I have made many presentations and CLE classes to or on behalf of the Pennsylvania Bar Institute, the Pennsylvania Land Title Institute, the Pennsylvania Insurance Commission, the National Association of Land Title Examiners and Abstractors, the National Association of Independent Land Title Agents, the Association of Title Examiners, the Pennsylvania Recorder of Deeds Association, the Property Records Industry Association, and the local Realtors' Associations in southeastern Pennsylvania for the Pennsylvania Association of Realtors.

6. I assisted in the preparation of an amicus brief submitted to the United States Supreme Court in the case of *Edwards v. First American* which was successfully decided in

favor of the Plaintiff in June of 2012. In addition, I have served as an expert witness in the Court of Common Pleas of Delaware County, the Federal District Court for the Eastern District of Pennsylvania, and Superior Court in New Jersey.

7. I am the past President of the National Association of Independent Land Title Agents, a former executive board member and committee chair of the Pennsylvania Land Title Association, a member of the Association of Title Examiners, and a member of the National Association of Independent Land Title Agents.

8. As part of some of my testifying and speaking engagements, I have researched and studied the problem with the Mortgage Electronic Registration System (MERS) extensively and consulted with other experts in the field including members of the Consumer Financial Protection Bureau in Washington, D.C as well as the past executive director of the American Land Title Association, which was instrumental in the formation of MERS.

**B. How MERSCORP and the MERS System Affects Consumers and the Title Insurance Industry**

9. Unlike the savings bank run by Jimmy Stewart in the movie, It's A Wonderful Life, today's mortgage market is enormous, complex, and little understood. But just as in Jimmy Stewart's world, the mortgage originated to finance the purchase of residential properties and homes are the bedrock of our economy and societal structure. Mortgages today go through four stages: (a) origination by a broker or mortgage banker; (b) sale of the note to FNMA, Freddie Mac or several other warehousing lenders; (c) servicing of the loan by a non-owner of the note and (d) securitization by investment bankers.

10. Title insurance agents have a fiduciary duty to the buyer of a policy and a contractual duty to their underwriter to search the public land records, examine (analyze) the information to assure clear title to the property for both the new owner and his mortgagee.

[3]

Without this process land ownership would be chaotic and lenders would be far less likely to provide financing.

11. As a licensed agent for over 30 years, I have searched courthouse records and examined (analyzed) thousands of properties for our clients, the purchasing homeowner. At the inception of the MERSCORP system through their wholly owned subsidiary MERS (Mortgage Electronic Recoding System) the only apparent impact was the addition of a bar code. However, as time went by I learned information about MERS that contradicted my understanding of how our land record system works and the specific purpose it serves.

12. A mortgage is a conveyance by the borrower to the lender of a legal interest in the property. That interest is equal to the title (fee simple, etc.) that the borrower enjoys. Mortgages, like deeds, convey legal title to the lender. Promissory Notes bind a borrower to pay a debt, in this instance the money used to purchase real property. Promissory Notes can exist on their own without a mortgage but a mortgage cannot have life without a note to support its existence. *Carpenter vs. Longan,* 83 U.S. 271, 1872.

13. Mortgage origination involves the sale of a product that finances the purchase of a home. That product is formalized at the settlement table by the execution of a promissory note and a mortgage. The note is evidence of the advancement of funds by the lender for the benefit of the borrower. The mortgage provides collateralization for the loan by a creating a lien on the property and serving as constructive notice to the whole world that the homeowner owes a debt collateralized by the mortgage. The recording of the mortgage at the courthouse completes the constructive notice and the story as to the specific history of legal title to the subject property. The promissory note is a negotiable instrument governed by the Uniform Commercial Code

[4]

(U.C.C.) and essentially the same type of document used when borrowing money to purchase a car, appliances, or even home improvements. The note is not recorded at the courthouse.

14. In my experience as a licensed title agent it has been my experience that in the last 20-25 years the vast majority of loans to homeowners are sold, for a profit, to a third party. Often these loans are sold many times. However, there exists business entities that service these loans by collecting monthly payments of principal, interest, property taxes and insurance, remitting these funds to the proper parties, issuing monthly statements to the borrower, sending late notices to delinquent borrowers, etc. and charging a fee for doing so. Servicers do not own the note or have title to the mortgage. They are hired guns employed to perform a task for a fee.

15. The sale of the promissory note creates a profit for the originator and relieves them of liability on their accounting records if the loan goes bad. Often they continue to service the loan or the purchaser of the note will engage the services of another party. Borrowers are often advised at settlement that their "loan" will be sold, and on occasion to whom. They are not advised that the "loan" may be sold multiple times thereafter. FNMA and Freddie Mac are two of the largest purchasers of these "loans". In turn, FNMA, Freddie Mac, and any other warehouse lender sell bundles of these loans to investment bankers who create securities in a secondary market. When a loan goes bad, the investment banker hires a foreclosure attorney to file suit. The homeowner is thus sued by an often unfamiliar entity such as *Deutsche Bank National Trust Company, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2007-CH2, Asset Backed Pass-Through Certificates, Series 2007-CH2*, who is the holder in due course of the note. The mortgagor when sued looks at their mortgage document which lists "ABC" Bank as the mortgagee. If they look carefully they also see the statement that MERS is the nominee of

"ABC" Bank and that MERS is also the mortgagee. Thus consumers often express confusion, misunderstanding and apprehension when they have been served a complaint in foreclosure.

16.   As a licensed title agent I have no access to the information in the bar code MERS adds to every document. Further, I have no access to the data base of exchanges, sales and assignments that MERS facilitates for the benefit of their customers who are primarily large mortgage banking institutions. MERS blatantly pronounces that one of their benefits is to bypass the recording process of any sale or assignment of the note thus saving their members untold millions of dollars in recording fees not counting the labor and effort necessary to produce such documents and properly record them. Their bottom line is to improve the bottom line of their members. Thus, I am denied, as well as the consumer, the ability to know who currently owns the negotiable piece of paper known as the note. I am limited to knowing the origination of the loan until such time as MERS or someone in and heir system decides to record an assignment of sale of a mortgage to the holder in due course of a note.

17.   Mortgage foreclosure in Pennsylvania is permissible to a holder in due course of a note when the note and mortgage have been duly assigned pursuant to 21 P.S. 623-1. Alternatively, the holder may sue the maker on the note, obtain a judgment and then foreclose on the resulting judgment. MERS supports the concept that an indenture given to a mortgagee is valid as to a holder in due course of the promissory note <u>without notice</u> to the mortgagor. This simple failure to record can cause a searcher to rightly presume a missing link in the chain of mortgages. Title searches and examiners are not required to guess at the identity of any party to a transaction. Meanwhile should the note holder choose to foreclose on the mortgage he is required to produce the Note, the assignment thereof and thus his nexus to the foreclosure.

[6]

Without such documentation, which is contrary to Pennsylvania statute, neither the mortgagor or the courts can ascertain the chain of events or the validity of the transaction.

18. In summary, MERS is eroding our land records, failing to provide consumers and both title and mortgage professionals alike with critical information necessary to evaluate the marketability of title and credit worthiness of the consumer, while avoiding the payment of millions of dollars in fees due to county recorders. This scheme combined with securitization without regard for consumers and long established recording statute and procedures has created more harm than just the aforementioned loss of recording revenue.

Stated by the Declarant under penalty of perjury that the foregoing is true and correct.

_____
Charles W. Proctor, III, J.D., C.L.T.P.
11/04/13

[7]