**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MONTGOMERY COUNTY, PENNSYLVANIA,     :
RECORDER OF DEEDS, by and through    :
Nancy J. Becker in her official      :
capacity as Recorder of Deeds of     :
Montgomery County, on its own        :
behalf and on behalf of all others   :
similarly situated,                  :
                                     :
          Plaintiff,                 :     CIVIL ACTION
                                     :
     v.                              :
                                     :     NO. 11-CV-6968
MERSCORP, INC., and MORTGAGE         :
ELECTRONIC REGISTRATION SYSTEMS,     :
INC.,                                :
                                     :
          Defendants.                :

**MEMORANDUM AND ORDER**

**JOYNER, J.**                              **February 11, 2014**

     This matter is presently before the Court on Motion of the
Plaintiff for Class Certification.  After careful consideration
of the arguments and evidentiary materials submitted by the
parties, we shall grant the motion.

**Statement of Relevant Facts**

     Plaintiff Nancy J. Becker is the duly-elected Recorder of
Deeds for Montgomery County, Pennsylvania.  Purporting to act in
her official capacity on behalf of herself and all other
similarly situated Pennsylvania County Recorder of Deeds Offices,
Plaintiff's Complaint seeks to compel Defendants to record all

mortgage assignments that were, are now and will in the future be, registered within the MERS "system" and pay the attendant recording fees[1].   With that goal in mind, Plaintiff seeks primarily equitable relief in the form of a declaration and/or permanent injunction compelling Defendants to record the disputed mortgage assignments, and an order quieting title and finding that Defendants were unjustly enriched.

Plaintiff filed her complaint on November 7, 2011. Defendants moved to dismiss the complaint in its entirety for failure to state a claim upon which relief may be granted which was, for the most part denied, on October 19, 2012.[2] Contemporaneous to filing an Answer to Plaintiff's Complaint, Defendants filed a Second Motion to Dismiss Plaintiff's quiet title claim on December 10, 2012.  Following the denial of this second motion on March 6, 2013, the Plaintiff filed the instant Motion to Certify Class on April 26, 2013.  Specifically, the proposed class would consist of each county Recorder of Deeds in Pennsylvania in his or her official capacity and would therefore consist of 67 members in all.  Not surprisingly, Defendants

---

[1]   As we explained in our Memorandum and Order of October 12, 2012 granting Defendants' Motion to Dismiss in limited part, "[t]he gravamen of the Plaintiff's claims is that the Defendants have created a private system for tracking conveyances of interests in land which bypasses the statutorily created recording system in a manner incompatible with Pennsylvania law," most particularly, the Recording Statute, 21 P.S. §351.  (See, e.g., 904 F. Supp. 2d 436, 439 (E.D. Pa. 2012)).

[2]   In the Memorandum and Order of October 19, 2012, the only claim which was dismissed was Plaintiff's claim for civil conspiracy against Defendants.

oppose the motion.

### Standards Applicable to Class Certification Requests

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432, 185 L. Ed.2d 515, 521 (2013)(quoting Califano v. Yamasaki, 442 U.S. 682, 700-701, 99 S. Ct. 2545, 61 L. Ed.2d 176 (1979)).  "In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'"  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550, 180 L. Ed.2d 374, 388-389 (2011)(quoting, *inter alia*, East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed.2d 453 (1977)).

The principles and procedures governing class actions are clearly delineated in Fed. R. Civ. P. 23.  The initial prerequisites are set forth in Rule 23(a), which reads as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately

3

protect the interests of the class.

Thereafter, under Rule 23(b),

A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Under these parameters, "the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion." Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013)(quoting, General Telephone Company of the Southwest v. Falcon, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).  It has been observed that the requirements set out in Rule 23 are not mere pleading rules - the party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence.  Marcus v. BMW of North America, LLC, 687 F.3d 583, 591 (3d Cir. 2012).  A party's assurances to the court that it intends or plans to meet the requirements is insufficient and thus it has been said that "[t]he evidence and arguments a district court considers in the class certification decision call for rigorous analysis."  In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 318 (3d Cir. 2008).

The trial courts are well-positioned to decide which facts and legal arguments are most important to each Rule 23 requirement and possess broad discretion to control proceedings and frame issues for consideration.  Id., 552 F.3d at 310. "Careful application of Rule 23 accords with the pivotal status of class certification in large-scale litigation, because 'denying or granting class certification is often the defining

5

moment in class actions for it may sound the "death knell" of the litigation on the part of plaintiffs or create unwarranted pressure to settle nonmeritorious claims on the part of defendants.'" Id, (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 162 (3d Cir. 2001)).  In conducting its rigorous analysis, the district courts "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits - including disputes touching on elements of the cause of action." Marcus v. BMW of North America, 687 F.3d 583, 591 (3d Cir. 2012)(quoting In re Hydrogen Peroxide, 552 F.3d at 307). Indeed, "Rule 23 gives no license to shy away from making factual findings that are necessary to determine whether the Rule's requirements have been met." Id.                        **Discussion**

As noted, to "warrant certification, a 'class action must satisfy the four requirements of Rule 23(a) *and* the requirements of either Rule 23(b)(1),(2) or (3).'" Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Co., Civ. A. No. 12-3824, 2013 U.S. Dist. LEXIS 168947 at *9 (E.D. Pa. Nov. 20, 2013)(emphasis added, quoting Marcus, 687 F.3d at 590).  "In addition, many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." Marcus, 687

F.3d at 592-593.  In other words, "[a]s an 'essential
prerequisite' to class certification, plaintiff must show by a
preponderance of the evidence that the class is ascertainable."
Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 354 (3d Cir.
2013)(citing Marcus, 687 F.3d at 692).  "Ascertainability is
important because it 'eliminates serious administrative burdens
... by insisting on the easy identification of class members,"
allows for the best notice practicable, and thereby protects
absent class members; and protects defendants by clearly
identifying the individuals to be bound by the final judgment.'"
Hayes, 725 F.3d at 355 (quoting Marcus, 687 F.3d at 593).
However, "if class members are impossible to identify without
extensive and individualized fact-finding, or 'mini-trials,' then
a class action is inappropriate." Carrera v. Bayer Corp., 727
F.3d 300, 303 (3d Cir. 2013)(quoting Marcus, supra, at 593).
Further, if class members cannot be ascertained from a
defendant's records, there must be a "reliable, administratively
feasible alternative;" a method that would amount to no more than
ascertaining by potential class members "say-so" should not be
approved.  Id, (quoting Id, at 594); Hayes, 725 F.3d at 355.

   *1.  Rule 23(a) Requirements*

   Routinely, the four Rule 23(a) requirements are described as
"numerosity," "commonality," "typicality," and "adequate
representation" and are said to "effectively limit the class

7

claims to those fairly encompassed by the named plaintiff's claims." Dukes, 131 S. Ct. at 2550, 180 L. Ed. 2d at 389 (quoting, General Telephone Co. of Southwest v. Falcon, supra, and General Telephone Co. of Northwest v. EEOC, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980)). To satisfy the numerosity requirement, "no minimum number of plaintiffs is required," but under Third Circuit precedent "generally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Hayes, 725 F.3d at 357, n.5 (3d Cir. 2013)(quoting Stewart v. Abraham, 275 F.3d 220, 226-227 (3d Cir. 2001)). Although "Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members, in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." Id, (quoting Marcus, at 596-597). "Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." Id.

We find that the numerosity and ascertainability requirements are easily satisfied in the case at hand. Plaintiff Becker seeks to certify as a class "each County Recorder of Deeds in Pennsylvania in his or her official capacity." Given that

there are 67 counties in the Commonwealth of Pennsylvania and
that the identities of each of the individuals who presently hold
the office of Recorder of Deeds is a matter of public record, we
conclude that the proposed class, while admittedly on the small
side, is sufficiently numerous that joinder of all would be
impracticable and unwieldy and that each and every member may
easily be identified and noticed[3].

Turning to the second component of Rule 23(a), "commonality
requires the plaintiff to demonstrate that the class members

_____

[3]   Defendants claim that Plaintiff has failed to demonstrate
numerosity, adequacy and typicality because not all Pennsylvania Recorders of
Deeds have the authority to sue on their own behalf given the provisions of
the various Pennsylvania Township Codes which require either appointment of
counsel only by the County Commissioners, appointment by county solicitor with
consent of the commissioners or, in the case of Allegheny County, review by
Professional Services Review Committee.   See, e.g., 16 P.S. §§210, 904, 1801,
3904, 5001.  However, as the Supreme Court decreed in Shady Grove Orthopedic
Assoc. v. Allstate Insurance Co., 559 U.S. 393, 130 S. Ct. 1431, 176 L. Ed.2d
311 (2010), Rule 23 is a "categorical rule entitling a plaintiff whose suit
meets the specified criteria to pursue his claim as a class action," and thus
"if the prescribed preconditions [of Rule 23] are satisfied, a class action
may be maintained." Id, 559 U.S. at 398, 399, 130 S. Ct. at 1437, 1438.  Rule
23 further charges the district courts with assessing the qualifications of
class counsel and deciding who to appoint to represent the representative
plaintiff and the class in a class action – it is entirely silent on the
matter of requiring consent and/or input from local entities in class actions
such as this one involving political subdivisions like the Pennsylvania
counties here.  As noted in Shady Grove, "it is not the substantive or
procedural nature or purpose of the affected state law that matters, but the
substantive or procedural nature of the Federal rule,"...the validity of which
depends entirely upon whether it regulates procedure. ...  If it does, it is
authorized [by the Rules Enabling Act, 28 U.S.C. §2072] and valid in all
jurisdictions regardless of its incidental effect upon state-created rights."
559 U.S. at 410, 130 S. Ct. at 1444.

Insofar as Rule 23 has been found to regulate procedure and its validity
upheld by the Supreme Court, in assessing the certification question here we
need consider only whether the pre-conditions set forth in the rule have been
met.  Id.  See Also, Knepper v. Rite Aid Corp., 675 F.3d 249, 265 (3d Cir.
2012)("we need only determine whether Rule 23 'really regulates procedure,'
which the [Supreme] Court has already concluded it does.") Whether the
individual recorders of deeds of each of the Pennsylvania counties have
properly obtained authorization to retain counsel to represent them is, at
least in this proposed class action, irrelevant.

'have suffered the same injury.'" Dukes, 131 S. Ct. at 2551, 180 L. Ed.2d at 389 (quoting Falcon, 457 U.S. at 157).  It is the law in the Third Circuit that a putative class satisfies the commonality requirement if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Rodriquez v. National City Bank, 726 F.3d 372, 382 (3d Cir. 2013)(quoting Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)).  Thus, "a finding of commonality does not require that all class members share identical claims, ...[as] factual differences among the claims of the putative class members do not defeat certification." In re Prudential Insurance Company America Sales Practices Litigation, 148 F.3d 283, 310 (3d Cir. 1998). Id, (quoting Baby Neal, supra.).  "Their claims must depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution," so that determination of the truth or falsity of this common contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at 2551, 180 L. Ed.2d at 389-390.  In other words, there may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant." Rodriquez, supra.

Here, it appears that the claims of each of the putative class are in fact identical or very nearly so.  Specifically, the

harm which is alleged to have been visited upon all of them is the purportedly improper avoidance of recording mortgage assignments and paying the attendant recording fees.  As a consequence, it is alleged that the public records which all of the proposed class members are charged by Pennsylvania law with safeguarding and the accuracy of which they are charged with maintaining have been compromised.  It is further averred that all of the class members suffered additional harm in that they were deprived of the monies which would have accompanied the recording of each mortgage assignment.  Inasmuch as both the Defendant's alleged conduct and the harm that is alleged to have resulted from that conduct are common to all class members, we find that the commonality requirement of Rule 23(a)(2) has been met here[4].

Typicality, the Rule 23(a)(3) requirement, is "designed to align the interests of the class and the class representative so that the latter will work to benefit the entire class through the pursuit of their own goals."  In re Prudential, 148 F.3d at 311 (citing Baby Neal, 43 F.3d at 57).  It has been observed that both typicality and commonality "serve as guideposts for determining whether under the particular circumstances

_____

[4]  While we recognize that the extent of damage(s) sustained and/or the amount(s) lost by each class member clearly varies from county to county, depending on the amount which each county charges for such services and the number of unrecorded assignments, we do not find this factual difference sufficient to overcome our finding of commonality.

11

maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."   Dukes, 131 S. Ct. at 2551, n.5, 180 L. Ed.2d at 390, n.5 (quoting Falcon, 457 U.S. at 157-158, n. 13).   Accordingly, "these requirements tend to merge" with one another and "with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." Id,(citing Id.); In re Prudential, 148 F.3d at 310-311.

To evaluate typicality, courts ask whether the named plaintiffs' claims are typical – in common sense terms, of the class thus suggesting that the incentives of the named plaintiffs are aligned with those of the class.  Beck v. Maximus, Inc., 457 F.3d 291, 295-296 (3d Cir. 2006).  "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members and if it is based on the same legal theory." Id.,(quoting Baby Neal, 43 F.3d at 58).

In application of these principles to this case, we likewise find that the typicality element is satisfied.  The claims of Ms. Becker arise from the same course of conduct and/or practices of the MERS defendants as do those of the other 66 Recorders of Deeds in the Commonwealth.  That is, the designation of MERS as

the mortgagee "as nominee" for the lender-member and its successors and assigns when the original mortgage is made and recorded and, in those cases where the loan is sold, subsequent registration of the change in note holder on the MERS system in lieu of publicly recording a mortgage assignment with the county recorders' offices.  While there are some factual disparities, they are largely confined to the area of damages, such as the number of unrecorded mortgages, the amounts of the recording fees charged by each county, etc. and should in no way pose a conflict between the named plaintiff and the class which she seeks to represent.  We thus easily find the typicality requirement to have also been satisfied here.

We next consider whether the representative party (*i.e.,* Ms. Becker) will fairly and adequately protect the class' interests.

"[T]he adequacy requirement" of Rule 23(a)(4) "has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs."  Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 181-182 (3d Cir. 2012).  Thus the adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625, 117 S. Ct. 2231, 2250, 138 L. Ed.2d 689 (1997).  Indeed, the Third Circuit has "recognized that the linchpin of

the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class," and "not proof of vigorous pursuit of the claim." Dewey, 681 F.3d at 183; In re Community Bank of Northern Virginia, 418 F.3d 277, 307 (3d Cir. 2005).

Certain intra-class conflicts may cause the interests of the representative plaintiffs to diverge from those of the unnamed class members.  Dewey, 681 F.3d at 183-184.  "The adequacy requirement 'is designed to ferret out' such conflicts of interest 'and to ensure that the putative named plaintiff has the incentive to represent the claims of the class vigorously.'" Id, at 184 (quoting In re Visa Check/Master Money Antitrust Litigation, 280 F.3d 124, 145 (2d Cir. 2001), superceded by statute on other grounds, as recognized in Bateman v. Am. Multi-cinema, Inc., 623 F.3d 708, 722 (9th Cir. 2010) and Drennan v. PNC Bank, NA, 622 F.3d 275, 290 (3d Cir. 2010)).

Of course, not all intra-class conflicts will defeat the adequacy requirement.  Id.  "'The hard question concerning intraclass conflicts asks which conflicts should matter, what divisions should render the class representation so defective in structure as to rise to the level of a constitutional dereliction,' or violation of Rule 23(a)(4)." Id, (quoting Samuel Issacharoff & Richard A. Nagareda, *Class Settlements Under Attack*, 156 U. Pa. L. Rev. 1649, 1678 (2008)).  It is not enough

14

for objectors to point to differences in claims, allocation
amounts, or state laws without identifying how such differences
demonstrate a conflict of interest.  <u>In re Pet Foods Product
Liability Litigation</u>, 629 F.3d 333, 349 (3d Cir. 2010).  Rather,
a "conflict must be fundamental to violate Rule 23(a)(4)."
<u>Dewey</u>, 681 F.3d at 184 (quoting <u>In re Literary Works in Elec.
Databases Copyright Litig.</u>, 654 F.3d 242, 249 (2d Cir. 2011)).

"A fundamental conflict exists where some class members
claim to have been harmed by the same conduct that benefitted
other members of the class."  <u>Id</u>, (quoting <u>Valley Drug Co. v.
Geneva Pharmaceuticals</u>, 350 F.3d 1181, 1189 (11th Cir. 2003)).  A
fundamental conflict also exists where it touches the "specific
issues in controversy," and thus "a conflict concerning the
allocation of remedies amongst class members with competing
interests can be fundamental and can thus render a representative
plaintiff inadequate."  <u>Id</u>.  "A conflict that is unduly
speculative, however, is generally not fundamental."  <u>Id</u>.

In assessing the adequacy of a proposed class representative
then, we are charged with answering: (1) whether an intra-class
conflict exists and if so, (2) whether that conflict is
"fundamental."  <u>Id</u>.  Defendants assert that Plaintiff is not an
adequate class representative because of her pre-existing
fiduciary obligations to Montgomery County and its residents
which, Defendants contend, create an irreconcilable conflict with

the fiduciary duty she would owe to the putative class members to prioritize their interests[6].  More particularly, Defendants point to that portion of Ms. Becker's deposition testimony in which she responded to its counsel's question "If there is ever a conflict in the interest of Montgomery County residents and any other county, where do you go?" by stating that as the Recorder of Deeds for Montgomery County, her "first obligation is to Montgomery County...the residents of Montgomery County [who] elected her to collect...every penny that is due Montgomery County."  (Exhibit B, Becker Deposition at pp. 107, 113, 115-116).  However, Plaintiff also testified that while she believed she had a fiduciary obligation to Montgomery County residents in her role as Montgomery County Recorder of Deeds, she believed she had a fiduciary obligation to the other counties in Pennsylvania in her other role as class representative in this case and that she would be negligent in accepting a settlement which would only benefit Montgomery County.  (Exhibit B, p. 112-113, 116-117).

Again, it is not enough for objectors to point to differences in claims, allocation amounts, or state laws without

---

[6]  Defendants further challenge Plaintiff's adequacy as a class representative and her showing of typicality on the grounds that "her lawsuit improperly seeks to usurp the obligations and rights that other Pennsylvania counties have to decide on behalf of their own electorate and through their own required procedures whether to hire outside counsel to represent them and, if so, who and under what terms."  The Court finds this argument to be particularly disingenuous given that, in keeping with Rule 23(c)(2), class members have the option of requesting exclusion from the class.  Hence, in the event that any class members believe that Plaintiff is usurping their rights or obligations, they are free to remove themselves from the class and from this action.

identifying how such differences demonstrate a conflict of interest.  Defendants have not identified or demonstrated how the variances in recording fees charged, non-recorded assignments or each county's decision-making processes operate as a conflict of interest.  To reiterate, a fundamental conflict may be found where some class members claim to have been harmed by the same conduct that benefitted other members of the class and one which is unduly speculative is not fundamental.  Here, there has been no showing that any of the class members have benefitted from the defendants' alleged conduct; instead all have suffered the same or nearly identical harm.  Further, the hypothetical which defense counsel posed to Ms. Becker in her deposition is nothing other than pure speculation: while it is admittedly *possible* that a settlement would be offered only to Montgomery County for the harms which it allegedly sustained, it is far from likely given that a piecemeal settlement with only one out of sixty-seven counties would certainly not be in Defendants' economic interest. Accordingly, given that we find an alignment of the interests and incentives of Ms. Becker with all of the members of the proposed class, we deem her to be an adequate class representative.

As for class counsel, there does not appear to be any dispute as to their qualifications.  As declared by Plaintiff in her brief, her proposed class counsel includes the law firms of Kohn, Swift & Graf, PC, Lamb McErlane, PC, Cooper & Schaffer,

LLC, Whitfield, Bryson & Mason, LLP and Cuneo, Gilbert & Laduca, LLP.  The Kohn, Swift, Whitfield and Cuneo law firms are experienced and established class action law firms which have previously been appointed as class counsel in a multitude of class actions involving consumer rights, fraud, financial and other matters in state and federal courts throughout the country. The Lamb McErlane firm is a Pennsylvania law firm with significant business litigation experience and the Schaffer law firm is the solicitor for the Montgomery County Recorder of Deeds which has counseled Plaintiff in this case since its inception. Defendants do not dispute or take issue with these facts. Rather, Defendants' sole argument in opposition is that "putative class counsel cannot satisfy the adequacy requirement because they are seeking a legal ruling in other litigation that undermines Plaintiff's lawsuit."  (Defendants' Brief in Opposition to Plaintiff's Motion for Class Certification, at p. 24).

The other litigation to which Defendants refer is that action which was commenced in the Court of Common Pleas of Washington County on behalf of the County of Washington and all other similarly situated Pennsylvania Counties against the U.S. National Bank Association by, *inter alia*, attorneys Gary Mason and Jason Rathod of the Whitfield Bryson firm and Jonathan Cuneo and Charles Laduca of the Cuneo law firm.  (See, Defendants'

Brief in Opposition to Plaintiff's Motion for Class
Certification, Exhibit "F").  This suit, which seeks class action
status under the Pennsylvania Rules of Civil Procedure, (Pa. R.
C. P. 1701, *et. seq.*), does not appear to have yet been certified
as a class action by the Washington County Court.  In examining
the second amended complaint in that action, we note that that
lawsuit charges U.S. Bank with failure to record mortgage
assignments thus rendering false its claims that the loans which
it was packaging and selling in various residential mortgage-
backed security trusts were properly perfected.  It seeks to
disgorge the benefits which the defendant bank reaped through
this scheme, to quiet title and compel recordation in the County
Recorder of Deeds offices of all of the assignments not properly
recorded and a declaratory judgment that the subject mortgages
are not perfected and injunctive relief precluding Defendant from
continuing these practices in the future.  Thus, while the facts
upon which both this case and the Washington County suit are
based are the same and the remedies sought are similar, they are
not completely identical.

The two suits, however, are also not in conflict.  As
Plaintiff points out, since the "'certifying officers'" of MERS
who enable the scheme to function are simultaneously the officers
of MERS members," which include, but are not limited to the
officers, agents and employees of U.S. Bank, either or both may

be properly charged with recording the assignments.  (See, Pl's
Reply Memorandum in Further Support of Motion for Class
Certification, at p. 20).  The goals of both lawsuits are aligned
– to ensure a full, complete and accurate chain of title in all
of the county Recorder of Deeds offices throughout the
Commonwealth and to recover the fees attendant to accomplishing
this objective.  If the plaintiff in either of these actions is
successful, then all of the recorders will benefit.  We thus
reject the assertion that Plaintiff's counsel are seeking a legal
ruling in the Washington County action that undermines
Plaintiff's lawsuit.  For all of these reasons, we find the
adequacy component of Rule 23(a)(4) to also be satisfied.

    *2.  Rule 23(b) Requirements*

    Recognizing that Rule 23 demands a showing that the proposed
class falls into one of the categories outlined in subsection
(b), Plaintiff submits that "[b]ecause declaratory, injunctive,
and damages relief are appropriate, certification is warranted
under each of [the Rule 23(b)] prongs."  (Pl's Memorandum of Law
in Support of Motion for Class Certification, at p. 10).

    "Rule 23(b)(1) covers cases in which separate actions by or
against individual class members would risk establishing
'incompatible standards of conduct for the party opposing the
class,'... or would 'as a practical matter be dispositive of the
interests' of nonparty class members or 'substantially impair or

impede their ability to protect their interests.'" <u>Amchem</u>, 521
U.S. at 614, 117 S. Ct. at 2245 (quoting Fed. R. Civ. P.
23(b)(1)(A), (B)).  "Rule 23(b)(1)(A) 'takes in cases where the
party is obliged by law to treat the members of the class alike
(a utility acting toward customers; a government imposing a tax),
or where the party must treat all alike as a matter of practical
necessity (a riparian owner using water as against downriver
owners).  <u>Id</u>, (quoting Kaplan, *Continuing Work of the Civil
Committee: 1966 Amendments of the Federal Rules of Civil
Procedure (I),* 81 Harvard L. Rev. 356, 388 (1967)).  "Rule
23(b)(1)(B) includes, for example, 'limited fund' cases,
instances in which numerous persons make claims against a fund
insufficient to satisfy all claims."  <u>Id</u>, (citing Advisory
Committee's Notes on Fed. Rule Civ. Proc. 23, 28 U. S. C. App.,
pp. 696-697)).  "Certification under this subsection constitutes
a mandatory class, from which class members may not opt out of
the action 'to pursue litigation that might prejudice other class
members or the defendants.'" <u>Clauser v. Newell Rubbermaid, Inc.</u>,
Civ. A. No. 99-5753, 2000 U.S. Dist. LEXIS 10631 at *16 (E.D. Pa.
2000)(quoting <u>Bunnion v. Consolidated Rail Corp.</u>, No. 97-4877,
1998 U.S. Dist. LEXIS 7727 at *13 (E.D. Pa. May 14, 1998) and 6
James Wm. Moore, *Moore's Federal Practice §23.40[2]* (3d ed.

1998))[7].

On the other hand, "Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'  Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." Id, (quoting Advisory Committee's Notes, 28 U. S. C. App., p.697 and Kaplan, *Continuing Work*, 389)). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted - the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" Dukes, 131 S. Ct. at 2557 (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N. Y. U. L. Rev. 97, 132 (2009)). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory

---

[7] "Whereas Subsection (A) is designed to prevent prejudice to the party opposing the class, Subsection (B) is designed to prevent prejudice to the potential members of the class." Huegel, infra, 2002 U.S. Dist. LEXIS at *14 (citing Thomas v. Smithkline Beecham Corp., 201 F.R.D. 386, 396 (E.D. Pa. 2001)).  We note that Plaintiff here does not move to obtain certification under Rule 23(b)(1)(B).  This is undoubtedly because she cannot make the necessary showing that prosecuting separate actions by or against individual class members poses a risk of adjudications with respect to individual class members that, practically speaking, "would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." <u>Id</u>.  Finally, in like fashion to Rule 23(b)(1), "(b)(2) does not require that class members be given notice and opt-out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory and that depriving people of their right to sue in this manner complies with the Due Process Clause." <u>Id</u>, at 2559.

In application of the foregoing general principles to the matter at hand, we first cannot find this case to be one in which separate actions by or against the individual class members poses a real risk of establishing incompatible standards of conduct for Defendants.  To be sure, the Rule 23(b)(1)(A) requirement was designed to apply to cases in which it would be impossible for the defendant to comply with conflicting outcomes, specifically with regard to injunctive relief. <u>Panetta v. SAP America, Inc.</u>, Civ. A. No. 05-4511, 2006 U.S. Dist. LEXIS 17556 at *8 (E.D. Pa. April 7, 2006).  Even though different results may occur as the result of different factual scenarios such that, for example, some of the plaintiffs may prevail against the defendants in individual actions and some may not prevail, this is not a sufficient basis upon which to invoke Rule 23(b)(1)(A). <u>Huegel v. City of Easton</u>, Civ. A. No. 00-5077, 2002 U.S. Dist. LEXIS

22273 at *13 (E.D. Pa. Oct. 22, 2002).  Rather, Rule 23(b)(1)A)
only applies "to prevent situations in which different courts
establish incompatible standards of conduct."  Id, at *12
(quoting Casper v. Cunard Line, Ltd., 560 F. Supp. 240, 244 (E.D.
Pa. 1983)).  Where there is no evidence that another cause of
action may be brought asserting an incompatible claim,
certification under this subsection is inappropriate.  See also,
Casper, supra, ("Rule 23(b)(1)(A) is not meant to apply where the
risk of inconsistent results in individual actions is merely the
possibility that the defendants will pay damages to some
claimants but not to others.") Since that is precisely the case
here – there is nothing to suggest that another cause of action
asserting an incompatible claim might be instituted against these
defendants, we cannot find certification under Rule 23(b)(1)(A)
to be appropriate in this action.

We also decline certification under Fed. R. Civ. P.
23(b)(2), notwithstanding our belief that both injunctive and
declaratory relief are likely appropriate remedies for all of the
potential members of the proposed class.  However, in view of our
earlier assessment that potential class members in this case
should be afforded the opportunity to opt out and in light of the
following observation by the Supreme Court in Dukes, we adhere to
the belief that this case is best viewed through the lens of Rule
23(b)(3):

... Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages. ... Given that structure [of Rule 23(b)(2)], we think it clear that individualized monetary claims belong in Rule 23(b)(3).  The procedural protections attending the (b)(3) class - predominance, superiority, mandatory notice, and the right to opt out - are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers then unnecessary to a (b)(2) class.  When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute.  Predominance and superiority are self-evident.  But with respect to each class member's individualized claim for money, that is not so - which is precisely why (b)(3) requires the judge to make findings about predominance and superiority before allowing the class. ... In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process...(citation omitted) While we have never held that to be so where the monetary claims do not predominate, the serious possibility that it may be so provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here.

Id, 131 S. Ct. at 2557, 2558-2559.  As the Plaintiff in the instant action seeks not only declaratory and injunctive relief but money damages as well, we turn next to the dictates of Rule 23(b)(3).

Pursuant to that subsection, class action status is proper if "the questions of law or fact common to class members predominate over any questions affecting only individual members," such that "a class action is superior to other methods for fairly and efficiently adjudicating the controversy."  The

predominance "inquiry tests whether proposed classes are
sufficiently cohesive to warrant adjudication by representation."
Amchem, 521 U.S. at 623, 117 S. Ct. at 2249.  This standard is
"far more demanding" than the commonality requirement of Rule
23(a), ... demanding more than a common claim."  In re Hydrogen
Peroxide Litigation, 552 F.3d at 311 (quoting Amchem, 521 U.S. at
623; Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259
F.3d 154, 187 (3d Cir. 2001)).  While the plaintiff need not show
unanimity of common questions, he must demonstrate that any
individual differences are of "lesser overall significance than
the common issues," and that the individualized questions of fact
and law are manageable in a single class action.  Marsden v.
Select Medical Corp., 246 F.R.D. 480, 488 (E.D. Pa. 2007)(quoting
Barabin v. ARAMARK Corp., 210 F.R.D. 152, 161-162 (E.D. Pa. 2002)
and Sanneman v. Chrysler Corp., 191 F.R.D. 441, 449 (E.D. Pa.
2000)).  "Because the 'nature of the evidence that will suffice
to resolve a question determines whether the question is common
or individual,' ... a district court must formulate some
prediction as to how specific issues will play out in order to
determine whether common or individual issues predominate in a
given case.'" Hydrogen Peroxide, 552 F.3d at 311 (quoting Blades
v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005) and In re New
Motor Vehicles Can. Exp. Antitrust Litig., 522 F. 3d 6, 20 (1st
Cir. 2008)).  "If proof of the essential elements of the cause of

action requires individual treatment, then class certification is unsuitable." Id.; Newton, 259 F.3d at 172.

The superiority requirement in turn, requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" Community Bank of Northern Virginia, 418 F.3d at 309 (quoting Georgine v. Amchem Prods., Inc., 83 F.3d 610, 632 (3d Cir. 1996), aff'd, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). A "nonexhaustive list of factors pertinent to a court's 'close look'" at the superiority criteria is found in the text of Rule 23(b)(3) itself. Amchem, 521 U.S. at 615-616, 117 S. Ct. at 2246. It includes:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A) - (D). Finally, it has been said that "predominance and superiority overlap in that as the number of individual issues rises, the class action devise becomes a less superior method for adjudication." Huegel, 2002 U.S. Dist. LEXIS at *17-*18 (quoting Miller v. Hygrade Food Products Corp., 198 F.R.D. 638, 643 (E.D. Pa. 2001)).

We find the case presently before us to be well-suited for Rule 23(b)(3) certification. To reiterate, the gravamen of

Plaintiff's complaint is that Defendants' creation of a separate recording system in which it offered its members the option of recording mortgage assignments in lieu of recording in the public Recorders of Deeds offices was in contravention of Pennsylvania law. The result of this legal violation, according to Plaintiff, is that the accuracy of the public records has been compromised and the counties of the Commonwealth have been deprived of the recording fees to which they would have been entitled had the assignments been properly presented for recordation. Thus, should it be determined by the finder of fact that operation of the MERS system as alleged is violative of Title 21 of the Pennsylvania Statutes, that determination would apply with equal force in all 67 Pennsylvania counties and *a fortiori,* the Recorder of Deeds office in each of those counties would be entitled to a declaration of illegality, an injunction compelling the payment of lost and future assignment filing fees and to recover as damages the unpaid filing fees for those assignments previously not properly recorded. Again, the only factual variance between the individual counties of which we can conceive is the number of unrecorded assignments and the sum charged and/or fee schedules set by each. In our judgment, the questions of law or fact common to class members which involve liability clearly predominate over the damages questions affecting only individual members. We thus now turn to the final issue for our

consideration: whether the class action format would, in this case, prove superior.

Of course, from the standpoints of cost-effectiveness and efficiency, there can be no question but that a class action *is* superior.  It is cheaper, more cost-effective and more efficient by far to try one case instead of 65, to utilize the resources of one judge in one district rather than judges in courts sitting throughout the state, and to engage in written discovery, depositions and motion practice one time in lieu of multiple times.  However, despite these benefits, Defendants contest superiority.  Specifically, they assert that the superiority factor cannot be met because: (1) each recorder has a strong interest in controlling his/her own recording fee litigation, as is evidenced by the Washington County lawsuit; (2) the Eastern District is an undesirable forum given that neither of the MERS defendants is located here and Pennsylvania's quiet title rules dictate that such actions must be brought in the county in which the land is located, and (3) individual property by property examinations would be necessary to determine whether a given mortgage assignment was or was not recorded.  We address each contention in turn.

In this case, there is evidence that two other counties –

Washington and Delaware[8] - have filed lawsuits which mirror or
are substantially similar to this one.  Thus, while Defendants
are correct that there is some interest on the part of two other
potential class members in controlling the prosecution of these
claims, we nevertheless do not find this interest to be
sufficient to outweigh the benefits inherent in the class action
device.  Indeed, it appears that such interest in individual
control is minimal considering that 64 of Pennsylvania's 67
counties have taken no action with regard to the issues raised
here and given the dearth of evidence on this record as to the
proclivities or inclinations of any of these other counties or
county Recorders of Deeds.  And, as we discussed earlier in this
Memorandum Opinion, the Washington County action, while similar
to this one, is not identical – that action is proceeding under
the theory that U.S. Bank erroneously represented that the loans
which it was packaging and selling in various residential
mortgage-backed security trusts were properly perfected.  It also
has not been instituted by the Recorder of Deeds - it is the
County of Washington which brought suit there.  Should either

---

[8]   This action, captioned <u>Delaware County Pennsylvania Recorder of
Deeds, by and through Thomas J. Judge Sr. in his official capacity v.
MERSCORP, Inc., n/k/a MERSCORP Holdings, Inc., et. al.</u>, was filed in October,
2013 in the Court of Common Pleas of Delaware County and includes claims for
violations of 21 P.S. §351 and §876 of the Restatement of Torts (Second),
unjust enrichment, declaratory judgment and injunctive relief.  Also named as
defendants in that suit are Bank of America, Citimortgage, Credit Suisse
Financial Corp., HSBC Finance Corp., Everhome Mortgage Co., JP Morgan Chase
Bank, State Farm Bank, Wells Fargo Bank and Sovereign Bank.  Unlike the instant
suit and that filed by Washington County in its own Court of Common Pleas, the
Delaware County suit was not filed as a class action.

Plaintiff Becker in this action or the County of Washington prevail in either or both actions, all 67 counties and/or their recorders are potential beneficiaries.  Moreover, should any individual recorder desire to control their own suit, they are free to exercise their right to opt-out.   For all of these reasons, we are not persuaded by Defendants' argument.

Further, contrary to Defendants' second claim, it appears that both MERS, Inc. and MERS Corp. maintain registered offices in this district – MERS in West Chester and MERS Corp. in Philadelphia. (See, Exhibits 3 and 4 to Pl's Reply Memorandum in Further Support of Motion for Class Certification).  And, while Defendants are correct in their assertion that under the venue provision of the Pennsylvania Rules of Civil Procedure governing quiet title actions, Pa. R.C.P. 1062, such actions in the Pennsylvania courts "may be brought in and only in a county in which the land or a part of the land is located," under the Federal Rules, the defense of improper venue must be raised either in the responsive pleading or by filing a motion before the responsive pleading or it may be waived.  See, Fed. R. Civ. P. 12(b)(3); Breland v. ATC Vancom, Inc., 212 F.R.D. 475, 477 (E.D. Pa. 2002).   Insofar as Defendants only now raise this argument for the first time in their brief in opposition to Plaintiff's Motion to Certify, we do not find venue to be a barrier to superiority either.

Defendant's third assertion is, we find, the most compelling in that to the extent that an individual property-by-property examination of the land title and MERS system records would be necessary, it would be difficult.  This difficulty, however, would only possibly be an issue with respect to assessing damages.  Again, the liability question is essentially the same: whether Defendants were required by Pennsylvania law to record in the County Recorder of Deeds offices assignments of mortgages every time a loan was transferred/sold from one note holder to another.  Thus, for purposes of assessing manageability, we find no real difficulties or problems are likely to be encountered in the liability portion of this case.

As noted, it will undoubtedly be more challenging to manage the damages portion of the case, should that point be reached. We do not believe these difficulties to be insurmountable however.  For one, as Defendants point out and as Plaintiff apparently does not dispute, in instances where there was a transfer of interest from a MERS member to an entity that was not a member, assignments were in fact recorded.  Thus it seems to this Court that the damages proceedings may well be streamlined by focusing primarily on loans made and/or transferred by and between MERS members.  Furthermore, as the Third Circuit has recognized, "the necessity for calculation of damages on an individual basis should not preclude class determination when the

common issues which determine liability predominate." <u>Chiang v. Veneman</u>, 385 F.3d 256, 273 (3d Cir. 2004)(citing <u>Bogosian v. Gulf Oil Corp.</u>, 561 F.2d 434, 456 (3d Cir. 1977); <u>Carroll v. Stettler</u>, Civ. A. No. 10-2262, 2011 U.S. Dist. LEXIS 121171 at *13 (E.D. Pa. Oct. 19, 2011).   Accordingly, we likewise conclude that these potential difficulties are not so grave as to overcome the overall superiority of the class action device in this matter.

## **<u>Conclusion</u>**

Based upon the foregoing discussion and for all of the reasons outlined above, this Court finds class action status to be appropriate in this matter.  We therefore grant the Plaintiff's Motion for Class Certification and enter the annexed order.