## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MONTGOMERY COUNTY, PENNSYLVANIA, :
RECORDER OF DEEDS, by and through :
Nancy J. Becker in her official :
capacity as Recorder of Deeds of :
Montgomery County, on its own :
behalf and on behalf of all others :
similarly situated, :
                    :
       Plaintiff, :  CIVIL ACTION
                    :
   v. :
                    :  NO. 11-CV-6968
MERSCORP, INC., and MORTGAGE :
ELECTRONIC REGISTRATION SYSTEMS, :
INC., :
                    :
      Defendants. :

### MEMORANDUM AND ORDER

JOYNER, J.                                         June 30, 2014

     This civil action is once again before the Court on cross-motions of Defendants Merscorp, Inc. and Mortgage Electronic Registration Systems, Inc. ("the MERS Defendants" or "MERS") and Plaintiff for summary judgment and partial summary judgment, respectively (Doc. Nos. 67 and 80). For the reasons set forth below, Plaintiff's motion shall be granted in part and Defendants' motion denied in its entirety.

### Factual Background

     As outlined in our previous Memoranda adjudicating the

various motions filed earlier in this matter, Plaintiff, Nancy
Becker, is the Recorder of Deeds in and for Montgomery County,
Pennsylvania.  She filed this lawsuit on behalf of herself and
all other Pennsylvania Recorders of Deeds alleging that by
creating and maintaining a private, members-only registry for
recording and tracking conveyances of interests in real property,
the MERS Defendants have violated 21 P.S. §351[1] which requires
that such conveyances be publicly recorded in the county recorder
of deeds offices. Specifically, Plaintiff is challenging the
practice by which MERS serves as the mortgagee of record in the
public land records as the "nominee" for a lender who holds the
mortgage note and its successors and assigns and thereby
circumvents the need to record the transfer of the note each time
it is sold.

---

[1]     §351.  Failure to record conveyance

All deeds, conveyances, contracts, and other instruments of
writing wherein it shall be the intention of the parties executing
the same to grant, bargain, sell, and convey any lands, tenements,
or hereditaments situate in this Commonwealth, upon being
acknowledged by the parties executing the same or proved in the
manner provided by the laws of this Commonwealth, shall be
recorded in the office for the recording of deeds in the county
where such lands, tenements, and hereditaments are situate.  Every
such deed, conveyance, contract, or other instrument of writing
which shall not be acknowledged or proved and recorded, as
aforesaid, shall be adjudged fraudulent and void as to any
subsequent bona fide purchaser or mortgagee or holder of any
judgment, duly entered in the prothonotary's office of the county
in which the lands, tenements, or hereditaments are situate,
without actual or constructive notice unless such deed,
conveyance, contract, or instrument of writing shall be recorded,
as aforesaid, before the recording of the deed or conveyance or
the entry of the judgment under which such subsequent purchaser,
mortgagee, or judgment creditor shall claim.  Nothing contained in
this act shall be construed to repeal or modify any law providing
for the lien of purchase money mortgages.

2

As a result of what Plaintiff contends are Defendants' negligent and willful violations of the foregoing statute, Plaintiff seeks both monetary and equitable relief in the form of a declaration and/or permanent injunction directing Defendants to record mortgage assignments as well as an order quieting title and finding that Defendants were unjustly enriched.  By the motions which are now before us, the parties ask this Court to enter judgment and partial judgment in their favor as a matter of law, asserting that the dispute between them is primarily legal in nature and that there are no material facts in dispute. (<u>See</u>, <u>e.g.</u>, MERS Defendants' Memorandum of Law in Support of Motion for Summary Judgment, p. 8).

### **Standards For Adjudicating Summary Judgment Motions**

It is Fed. R. Civ. P. 56 which outlines the standards to be employed by the federal courts in considering motions for summary judgment.  Subsection(a) of that rule provides the following in relevant part:

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law...

In reviewing the record before it for purposes of assessing the propriety of entering summary judgment, the court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  <u>Ma v.</u>

Westinghouse Electric Co., No. 13-2433, 2014 U.S. App. LEXIS 5049, *9 (March 18, 2014); Burton v. Teleflex, Inc., 707 F.3d 417, 425 (3d Cir. 2013). The initial burden is on the party seeking summary judgment to point to the evidence "which it believes demonstrate the absence of a genuine issue of material fact." United States v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).

However, to survive summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant. Jakimas v. Hoffman-LaRoche, Inc., 485 F.3d 770, 777 (3d Cir. 2007). And, "if there is a chance that a reasonable juror would not accept a moving party's necessary propositions of fact," summary judgment is inappropriate." Burton, supra, (quoting El v. SEPTA, 479 F. 3d 232, 238 (3d Cir. 2007)).

The rule is no different where there are cross-motions for summary judgment. As the Third Circuit Court of Appeals has

4

observed: "cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008)(quoting Rains v. Cascade Industries, Inc., 402 F.2d 241, 245 (3d Cir. 1968)).  And, the mere fact that "both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury."  Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1023 (3d Cir. 2008)(quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure §2720* (3d ed. 1998), at 330-331).

## Discussion

According to the MERS Defendants,

"[t]he following five legal questions and issues are presented to the Court in this summary judgment motion:

> (1) whether Plaintiff has shown that the MERS Defendants have any mortgage assignments to land in Montgomery County, Pennsylvania that have not been recorded pursuant to the mandate in Section 351 (as interpreted by this Court) requiring the recording of all conveyances of land;

> (2) whether, in the absence of any such written mortgage assignments, Section 351 requires the transfer of secured debt to first be documented in a form suitable for recording and then recorded in the land records because it creates in the transferee an equitable interest in the mortgage;

5

(3) if transfers of secured debt must first be documented and then recorded under Section 351, whether the MERS Defendants have been the transferor or transferee of any such secured debt and, if they have not, whether, the MERS Defendants are the proper parties who are liable for and subject to the "mandates contained in Section 351;

(4) if Section 351 requires the documenting and recording of transfers of secured debt and the MERS Defendants are the proper defendants, but Section 351 creates no private cause of action on behalf of the County Recorder, whether the statute can be enforced by the Recorder of Deeds by bringing claims for quiet title and unjust enrichment as a means to enforce the statutory requirements contained in Section 351; and lastly,

(5) if summary judgment is not granted on any of the previous four issues, whether Plaintiff has presented the necessary proof to establish the elements of her claims for unjust enrichment and to quiet title to land."

(Defendants' Memorandum of Law in Support of Motion for Summary Judgment, p. 9).

By her response in opposition and cross-motion for partial summary judgment, Plaintiff rejoins that the entry of an Order of Declaratory Judgment finding that Defendants have violated and are currently violating 21 P.S. §351 with the result that they have been unjustly enriched at the expense of all of the county recorders of deeds in Pennsylvania is appropriate.  More particularly, Plaintiff submits that because the promissory note and mortgage are inseparable and an assignment of mortgage constitutes a recordable conveyance of title in land, this Court should reject MERS' argument that its system is lawful because

6

there is no legal requirement to publicly record promissory notes.

We begin by noting that Defendants' Question 4 has already been effectively answered by our Memorandum of October 19, 2012 wherein we found no need to reach the question of whether Section 351 bestowed a private right of action because Pa. R. C. P. No. 1061(b)(3) permitted Plaintiff to pursue an action to quiet title.[2]  Thus, inasmuch as this finding established the law of the case, we see no need to discuss it further.[3]  To appropriately address and answer Defendants' other questions and the arguments advanced by Plaintiff, we must confront head-on the model upon which Defendants' entire business is built and in so doing determine whether the "splitting" of a promissory note from the mortgage lien that secures it obviates the recording requirements imposed under the Pennsylvania statute.[4]

---

[2]  See also, Memorandum of March 6, 2013 wherein we denied Defendants' second motion to dismiss the complaint and reiterated that Pa. R. C. P. 1061 permitted a quiet title action absent an interest in the underlying land at issue.

[3]  The law of the case doctrine essentially holds that when a court decides upon a rule of law, that decision should continue to govern the same issues in the subsequent stages in the same case in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.  Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 816, 108 S. Ct. 2166, 2177-2178, 100 L. Ed.2d 811, 830 (1988); Benjamin v. Department of Public Welfare of Pennsylvania, 701 F.3d 938, 949 (3d Cir. 2012).  The law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.  Pharmacy Benefit Manages Antitrust Litigation, 582 F.3d 432, 439 (3d Cir. 2009).

[4]  Indeed, we outlined the process by which MERS functions in our Memorandum Opinion of October 19, 2012 denying the defendants' motion to dismiss in large part.  As we explained:

Underscoring this inquiry are the threshold questions of what *is* a mortgage under Pennsylvania law and what are the purposes of the Pennsylvania recording laws?

   *A. What is a Mortgage?*

   As generally described above, the ordinary mortgage consists

---

   The typical residential mortgage finance transaction results in two legally operative documents: (1) a promissory note, a negotiable instrument which represents the borrower's repayment obligation over the term of the loan; and (2) a mortgage, representing the security interest in certain property which entitles the holder of the note to foreclose on the property in the event of default on the note. ... MERS enters a mortgage finance transaction when the lender and the borrower name MERS, in the mortgage instrument, "as the mortgagee (as nominee for the lender and its successors and assigns)." ... The attendant promissory note is sold on the secondary mortgage market and may, over its term, have many owners. Sale of the note onto the secondary mortgage market principally takes two forms. In one, relatively straightforward, transaction, a lender who retains a note as part of its own loan portfolio transfers the note to another party for that party to hold for its own account or portfolio. ... In the other, a more complex process called securitization, the note is transferred, along with many other notes, through several different entities into a special purpose vehicle, typically a trust; the trust then issues securities backed by the trust corpus, i.e., the notes, to investors. ... Regardless of the secondary market route which the note takes, MERS remains the named mortgagee as "nominee" for the subsequent owners of the note as long as the note is held by a MERS member. ...

      ...

   Before the formation of MERS, secondary market investors generally required recorded assignments for most transfers of prior ownership interests [in security interests, i.e. mortgages.] ... This system entailed substantial administrative burdens on secondary mortgage market participants. ... As a result, in 1993, the Mortgage Bankers' Association ("MBA") Interagency Technology Task Force published a "white paper" ... that describes an electronic book entry system for the residential mortgage industry. At the time, among other benefits to the mortgage industry, MERS proponents claimed that "once MERS is established as the mortgagee of record, all subsequent transfers of ownership would be recorded electronically, eliminating the need to physically prepare, deliver, record and track assignment documents. The estimated cost savings for assignment processing for a single transfer would be an average of $45.50 per loan. ... So instead of effecting formal assignments of a mortgage when MERS members transfer the accompanying note between one another, the MERS members simply register the change in beneficial ownership in the MERS electronic database. ...

<u>See</u>, 904 F. Supp.2d 436, 439-440, 441 (E.D. Pa. 2012)(internal citations omitted).

of two instruments - the note or bond[5] and the mortgage
instrument itself.  The mortgage is simply security for the
payment of the note, with a right of a lien on the mortgage
premises to enforce payment.  <u>Philadelphia Federal Credit Union
v. Ankrah</u>, Civ. A. No. 13-3040, 2014 U.S. Dist. LEXIS 21095 at *8
(E.D. Pa. Jan. 30, 2014).  "A mortgage, unless it contain some
express covenant to that effect, is not of itself an instrument
which imports any personal liability for the money it secures."
<u>Baum v. Tonkin</u>, 110 Pa. 569, 572, 1 A. 535, 536 (1885).  In
Pennsylvania,

> [a] mortgage may be created as well without as with an
> accompanying personal obligation of the mortgagor to pay the
> debt secured, or attempted to be secured thereby. In the one
> case the property alone is charged with the lien – is looked
> to solely by the mortgagee out of which to make his lien; in
> the other, he has the additional security of the personal
> obligation of the mortgagor.  A debt chargeable only against
> certain property is, in effect, simply a debt with limited
> means of satisfaction or enforcement; the value of the
> property charged with the indebtedness is the measure of the
> security afforded.

<u>Hartje's Estate</u>, 345 Pa. 570, 574, 28 A.2d 908, 910 (1942).
Accordingly, under Pennsylvania state law, a valid mortgage can
be created without requiring the mortgagor to assume personal
liability under a note.  <u>In re Farris</u>, 194 B.R. 931, 940 (Bankr.

---

[5]  Historically, mortgages were accompanied by a bond, which was "a
promise to pay a sum of money according to the terms, covenants and conditions
set forth in the instrument," and a warrant of attorney authorizing "any
attorney-at-law to appear for the obligor and confess judgment against that
obligor for the penal sum of the bond."  Ladner, *Conveyancing in Pennsylvania*
§25.02(a), (b) (5th ed. 2013).  "In modern mortgage practice, promissory notes
have supplanted bonds and warrants as the underlying obligation in residential
mortgage transactions and in most commercial transactions as well."  <u>Id</u>.

E.D. Pa. 1996).[6]

Typically, a mortgagor's failure to pay the amounts due and owing under the note constitutes an event of default following which the holder may proceed to enforce the terms of the mortgage either through *in rem* foreclosure proceedings or by obtaining an *in personam* judgment on the note and seeking to execute.  Amerco Real Estate Co. v. Appalachian Self Storage, LLC, Civ. A. No. 3:11-CV-1166, 2012 U.S. Dist. LEXIS 116997 at *21 (M.D. Pa. Aug. 20, 2012)(citing Wilson v. Parisi, 549 F. Supp. 2d 637, 655 (M.D. Pa. 2008)).  See also, PFCU v. Ankrah, supra, ("The holder of a bond and mortgage can proceed *in rem* or *in personam* to enforce his claim; he may proceed by an action of mortgage foreclosure or by an action on the bond which the mortgage secures." (citing U.S. Bank, N.A. v. Mallory, 2009 PA Super. 182, 982 A.2d 986, 992 n.3 (Pa. Super. Ct. 2009); Levitt v. Patrick, 2009 PA Super. 117, 976 A.2d 581(2009) and Bank of Pennsylvania v. G/N Enterprises, Inc., 316 Pa. Super. 367, 371, 463 A.2d 4, 6 (1983)).  To be

---

[6]  Stated otherwise,

> [a] mortgage is a security instrument used by the mortgagee to secure payment of a debt or performance of an obligation.  When properly executed, delivered, accepted and recorded, the mortgage places a lien on the mortgaged premises.  If the mortgagor is unable or unwilling to pay the debt or perform the obligation, the mortgagee has recourse against the property. That recourse usually is a mortgage foreclosure action in court that results in a judicial sale. Being a secured creditor is important so that there is something of value that may be sold if the mortgagor defaults.  And, in bankruptcy situations, secured creditors usually have preference over those that are unsecured.

Ladner, *Conveyancing in Pennsylvania*, supra, §22.01.

sure, by having a loan secured by both a mortgage and a bond or note, a mortgagee has a choice of remedies - one against the mortgaged property, the other against the mortgagor personally. See, Ladner, at §22.05(b).  See also, Easton Theatres, Inc. v. Wells Fargo Land & Mortgage Co., 498 Pa. 557, 565, 449 A.2d 1372, 1376 (1982)(Dissenting Opinion, Flaherty, J.)("The effect of executing a bond or note secured by a mortgage, unless recourse on the bond is specifically limited, is to subject all of the real and personal property of the obligor to execution in the event of default.").  While these remedies may be pursued concurrently or consecutively, the mortgage may have only one satisfaction. Schuylkill Trust Co. v. Sobolewski, 325 Pa. 422, 426-427, 190 A. 919, 922 (1937); Elmwood Federal Savings Bank v. Parker, 446 Pa. Super. 254, 666 A.2d 721, 724, n.6 (1995).

Further, inasmuch as an action in mortgage foreclosure is strictly an *in rem* proceeding the sole purpose of which is to effect a judicial sale of the mortgaged real estate, it may not include an *in personam* action to enforce personal liability, unless the mortgagor waives any objection to the inclusion of the breach of contract action for a personal judgment in the mortgage foreclosure suit.  Newtown Village Partnership v. Kimmel, 424 Pa. Super. 53, 55, 621 A.2d 1036, 1037 (1993);  Insilco Corp. v. Rayburn, 374 Pa. Super. 362, 368, 543 A.2d 120, 123 (1988)(citing Pa. R. C. P. 1141 and Meco Realty Company v. Burns, 414 Pa. 495,

11

200 A.2d 869 (1964) and First Seneca Bank v. Greenville

Distributing Company, 367 Pa. Super. 558, 533 A.2d 157 (1987)).

To pursue both of these remedies, however, the creditor/mortgagee

must possess *both* the note and the mortgage.  See, e.g., U.S.

Bank v. Montalvo, Civ. A. No. 3:08-CV-1504, 2013 U.S. Dist. LEXIS

132595 at *8 (M.D. Pa. Nov. 14, 2013)(where defendant mortgagee

signatory to mortgage only and not note, plaintiff could not have

brought *in personam* action against him based on any alleged

failures to pay obligations due under note).

Additionally, notes secured by mortgages have been

determined to be negotiable instruments under the Pennsylvania

Uniform Commercial Code,[7] such that the holder of such an

---

[7]  13 Pa. C. S. §3104 defines negotiable instruments and notes under
the Uniform Commercial Code.  See generally, 13 Pa. C. S. §3104(a), (e). Under
Subsection (a), "negotiable instrument," "except as provided in subsections
(c) and (d), ... means an unconditional promise or order to pay a fixed amount
of money, with or without interest or other charges described in the promise
or order, if it:

   (1) is payable to bearer or to order at the time it is issued or first
   comes into possession of a holder;

   (2) is payable on demand or at a definite time; and

   (3) does not state any other undertaking or instruction by the person
   promising or ordering payment to do any act in addition to the payment
   of money, but the promise or order may contain:

      (i) an undertaking or power to give, maintain or protect
      collateral to secure payment;

      (ii) an authorization or power to the holder to confess judgment
      or realize on or dispose of collateral;

      (iii) a waiver of the benefit of any law intended for the
      advantage or protection of an obligor."

Subsection (e) states that "[a]n instrument is a 'note' if it is a promise and
is a 'draft' if it is an order.  If an instrument falls within the definition
of both 'note' and 'draft,' a person entitled to enforce the instrument may

instrument may be entitled to the protections afforded thereunder to a holder in due course.  JP Morgan Chase Bank, N.A. v. Murray, 2013 PA Super. 55, 63 A.3d 1258, 1265 (2013); In re Walker, 466 B.R. 271, 282 (Bankr. E.D. Pa. 2012); Deutsche Bank Nat'l Trust Company v. Carmichael, 448 B.R. 690, 694 (Bankr. E.D. Pa. 2011). Under the Code, a note may be negotiated from one person to another by mere transfer of possession.  See, 13 Pa. C. S. §§3201, 3203 (governing "Negotiation," and "Transfer of instrument; rights acquired by transfer").  From all of this, we conclude that Defendants are correct in their assertion that Pennsylvania law does indeed recognize a clear legal distinction between a promissory note and a mortgage and that promissory notes may generally be freely transferred without the requirement of recording.

This does not end the matter, however.  Again, it is the Defendants' premise that because the debt transfers at issue occur by mere delivery of promissory notes, they are not "written instruments" subject to the recording requirement of Section 351. Accordingly, the question which this case presents and with which we are here confronted is whether a promissory note that is secured by a mortgage also falls within the purview and meaning of a "conveyance," "contract," or "other instrument of writing" "wherein it shall be the intention of the parties executing the

treat it as either.

same to grant, bargain, sell and convey any lands, tenements or hereditaments situate in th[e] Commonwealth [of Pennsylvania]." 21 P.S. §351.  If so, then the mandate of Section 351 is clear: it "shall be recorded in the office for the recording of deeds in the county where such lands, tenements and hereditaments are situate." Id.  In an effort to resolve this question, we turn now to an examination of the purposes and intentions behind the Pennsylvania Recording statutes.

*B.  Pennsylvania Recording Law*

Generally speaking, the primary purpose behind enactment of the Pennsylvania statutes governing recording of property conveyances was the provision of notice of the identities of those who held an interest in the real estate at issue, primarily to protect subsequent bona fide purchasers from injuries caused by secret pledges of property.  6 Summ. Pa. Jur. 2d Property §§8:112, 9:17 (2d ed.)(2012).[8]  Indeed as early as 1848, the Pennsylvania Supreme Court noted that:

> "The intention of the acts requiring deeds to be recorded was to secure subsequent purchasers and mortgagees against prior secret conveyances and fraudulent encumbrances; and therefore when a person has notice of a prior conveyance, it is not a secret conveyance by which he can be prejudiced...

Mott v. Clark, 9 Pa. 399, 405 (1848).  And, just two years later, the Court observed:

---

[8]  "To qualify as a bona fide purchaser, a subsequent buyer must be without notice of a prior equitable interest."  Id.

14

"The principle runs through the whole system of our recording acts, that the object is to give public notice in whom the title resides; so that no one may be defrauded by deceptious appearance of title. ... The recording laws, like all other public laws are intended for the benefit and security of the people generally."

Salter v. Reed, 15 Pa. 260, 263-264 (1850).  These holdings remain undisturbed despite the passage of more than 150 years and thus the underlying purpose behind the Pennsylvania recording acts remains clear – to provide notice to the public of the identities of those who hold an interest in real estate as well as notice of the true nature of the transaction on record.  See, e.g., U.S. Bank, N.A. v. Mallory, 2009 PA Super 182, 982 A.2d 986, 994, n.6 (2009)("Mortgages are recorded to provide notice to the world as to whose interest encumbers title."); Weik v. Estate of Brown, 2002 PA Super. 63, 794 A.2d 907, 911 (Pa. Super. Ct. 2002); Roberts v. Estate of Pursley, 1998 PA Super. 2869, 718 A.2d 837, 841 (Pa. Super. Ct. 1998); Mancine v. Concord-Liberty Savings & Loan Ass'n., 299 Pa. Super. 260, 445 A.2d 744 (1982); Reiter v. Kille, 143 F. Supp. 590, 592-593 (E.D. Pa. 1956)(holding that inasmuch as recording is obligatory in Pennsylvania so as to give public notice in whom title resides, federal tax lien premised on unrecorded deed ineffective as against subsequent purchaser for value); Capital Center Equities v. Estate of Gordon, 137 B.R. 600, 611 (Bankr. E.D. Pa. 1992)(quoting Jacques v. Weeks, 7 Watts 261 (Pa. 1838)).  In accord, 1 West's Pa. Prac. §803(14)-1 (3d ed.)(2012): ("The

purpose of [the] statutes [providing for the recording of deeds
and mortgages] is to give notice of who holds interests in the
property, to provide evidence of title in case the original
documents are lost or unavailable, and to protect the interest
holders from the claims of others."). And in 1852, it was
determined that assignments of mortgages also fell within the
recording acts. Pepper's Appeal, 77 Pa. 373, 377 (1875); Philips
v. Bank of Lewistown, 18 Pa. 394, 402 (1852).

While the earlier versions of the recording statutes did not
make recording mandatory, nevertheless,

> "[w]hen the election [to record] is made and an instrument
> authorized by law to be recorded, is actually recorded, all
> the incidents and force of a public record attach to that
> record. It is an early and well recognized principle that
> one great object in spreading an instrument of writing on a
> public record is to give constructive notice of its contents
> to all mankind."

Pepper's Appeal, supra.

Thus, the benefits of recording an interest in land have
long been recognized in Pennsylvania and in 1863, the
Pennsylvania legislature first decreed that such recording should
be mandatory.[9]

------

[9] See, Act of April 1, 1863, P.L. 188, §1 repealed in part by 42 Pa.
C.S. §20002(a)[414]:

*Be it enacted by the Senate and House of Representatives of the
Commonwealth of Pennsylvania in General Assembly met, and it is hereby
enacted by the authority of the same,*

*That in all cases in which any of the former owners, or any other
person, or persons, shall have, in his or their possession, any bargains
of sales, deeds, conveyances, or other instruments in writing,
concerning any lands, tenements or hereditaments in this commonwealth,*

*C.  How Pennsylvania Law Treats Mortgages*

Over the years, however, there was some confusion over how a
mortgage should be viewed by the Pennsylvania courts - was it a
conveyance of title, a lien or cloud on the title of the real
estate, or merely security for the payment of money or
performance of some other collateral contract?  See, e.g., Wilson
v. Shoenberger's Executors, 31 Pa. 295, 299 (1858)("It is the
settled law of the Pennsylvania mortgage, that though in form a
conveyance of title, it is in reality, both at law and equity,
only a security for the payment of money, or performance of other
collateral contract."); McIntyre v. Velte, 153 Pa. 350, 25 A. 739
(1893)("The mortgage is but a security for the payment of money
with a right of lien upon the mortgaged premises to enforce
payment."); Bulger v. Wilderman, 101 Pa. Super. 168 (1931)("In
form, a mortgage is certainly a conveyance; but it is
unquestionably treated at law here, in the way it is treated in
equity elsewhere, as a bare incumbrance, and the accessory of a
debt.  As between the parties it is a conveyance, so far as is
necessary to enforce it as a security: as regards third persons,

---

he, or they, shall, upon six months' notice being given to him, or them,
by the present owner of such premises, or by any other person, or
persons, in any manner interested in any such bargains of sales, deeds,
conveyances, or other instruments of writing, place the same upon record
in the proper county, or deliver the same into the hands, or possession,
of the present owner, if such application be made by him.

(Italics in original)

Thereafter, 21 P.S. §351 was enacted in 1925.  See, Act of May 12, 1925,
P.L. 613, No. 327, §1.

the mortgagor is the owner, even of the legal estate...")(quoting
Presbyterian Corporation v. Wallace, 3 Rawle 109 (Pa. 1831)).

In 2004, the Pennsylvania Supreme Court decided Pines v.
Farrell, 577 Pa. 564, 848 A.2d 94 (2004).  Specifically the issue
presented in that case was whether certain financial regulations
which had been promulgated by the Court Administrator of
Pennsylvania interpreting the definition of "property transfer"
in 42 Pa. C. S. §3733(a.1)(1)(v)[10] to include mortgage

---

[10]   This statute reads, in pertinent part:

§3733.  Deposits into account.

(a) *General rule.*

(1) Beginning July 1, 1987, and thereafter, the total of all fines, fees
and costs collected by any division of the unified judicial system which
are in excess of the amount collected from such sources in the fiscal
year 1986-1987 shall be deposited in the Judicial Computer System
Augmentation Account.  Any fines, fees or costs which are allocated by
law or otherwise directed to the Pennsylvania Fish and Boat Commission,
to the Pennsylvania Game Commission or to counties and municipalities,
to the Crime Victim's Compensation Board, to the Commission on Crime and
Delinquency for victim-witness services grants under section 477.15(c)
of the act of April 9, 1929 ... known as the Administrative Code of
1929, to rape crisis centers, to the Emergency Medical Services
Operating Fund or to domestic violence shelters shall not be affected by
this subchapter.

        ...

(a.1)  *Additional fees.*

        (1) In addition to the court costs and filing fees authorized to
        be collected by statute:

        ....

                (v) An additional fee of $10 shall be charged and collected
                by the recorders of deeds and clerks of court, or by any
                officials designated to perform similar functions, for each
                filing of a deed, mortgage or property transfer for which a
                fee, charge or cost is now authorized.  The Supreme Court
                shall designate by financial regulations which filings meet
                the criteria of this subparagraph.

18

assignments, mortgage releases, and mortgage satisfactions were

valid and enforceable.   The Pines Court began its analysis with

this observation:

> "Proper resolution of this question first requires an
> examination of the legal definition of a mortgage; i.e., if
> a mortgage represents a property transfer, it logically
> follows that transactions involving mortgages are also
> property transfers.  The "title theory of mortgages deems a
> mortgage to be a conveyance, while a competing theory, the
> "lien theory, suggests that a mortgage merely represents a
> security interest."

Id., 848 A.2d at 99.  Recognizing that there was ample authority

for both theories under Pennsylvania common law, the Supreme

Court nevertheless found that such actions were "property

transfers" which bound the recorders of deeds, clerks of courts

and equivalent officials throughout Pennsylvania who were charged

with the duty of collecting fees in connection with such

transfers.   Indeed, the Court reasoned:

> What definitively tips the balance in this Court's view, is
> that, although a mortgage can be considered both a
> conveyance in form as well as a security interest, for
> purposes of actions involving recording acts, mortgages
> traditionally have been treated as conveyances.  "In all
> questions upon the recording acts, the mortgage is spoken of
> as a conveyance of land." ... Thus, for purposes of
> determining whether mortgage assignments, mortgage
> satisfactions and mortgage releases are property transfers,
> we begin with the premise that a mortgage conveys the
> property subject to the mortgage to the mortgagee until the
> obligations under the mortgage are fulfilled.

Id. at 100 (quoting In re Long's Appeal, 77 Pa. 151 (1874).  From

there, the Court further opined:

> Given our conclusion that a mortgage conditionally conveys
> the subject property, it logically follows that an

> assignment of the mortgagee's rights likewise effects a
> conditional transfer of the subject property to the
> assignee.  Additionally, even accepting respondent's
> argument that an assignee's rights cannot exceed those of
> the assignor, a property transfer still exists because the
> assignee will receive the rights held by the assignor, *i.e.*,
> the conveyance of the property subject to the terms of the
> mortgage. ... Thus, the Court Administrator correctly
> defined property transfer to include mortgage assignments.

Id. at 100-101 (citation omitted).  The Court reached the same

conclusion with respect to mortgage satisfactions and releases.

That is, the effect of both a mortgage satisfaction and a

mortgage release was to discharge the lien and release the

mortgagor from the obligations under the mortgage and to

"reconvey" the property to the mortgagor.  Pines, 848 A.2d at

101, 102. See also, First Citizens National Bank v. Sherwood, 583

Pa. 466, 879 A. 2d 178, 180, n.2 (2005)("A transfer of title is

no insubstantial thing, but rather resembles a right or privilege

which is permanent in nature.  The fact that at one point, the

mortgagor may fulfill the obligations of the mortgage, and

thereby receive title to the mortgaged property, does not negate

the fact that mortgaging the property transfers the title to the

mortgagee.").

While Pines may not be on all fours with the case at hand

inasmuch as we are charged here with interpreting a different

statute, it nonetheless represents a clear statement of

Pennsylvania law which is equally applicable in this case

particularly in view of its specific reference to the recording

20

acts.  Hence, inasmuch as "conveyance" is defined, *inter alia*, as
"**a.** Transfer of title to property from one person to another.  **b.**
The document by which this transfer is effected,"[11] we likewise
find that a mortgage assignment is a "conveyance" subject to the
recording mandate of §351.

    *D.  Severability of Notes and Mortgages*

    In view of this finding, we next consider whether a note
memorializing debt that is secured by a mortgage stands alone
such that it may be freely transferred by change in possession or
whether it too must be recorded.

    Under well-settled, long-held American law, where "mortgaged
premises are pledged as security for debt,"... "the note and
mortgage are inseparable. ..."  <u>Carpenter v. Logan</u>, 83 U.S. 271,
274, 16 Wall. 271, 21 L. Ed. 313, 315 (1872).  Thus, "[a]n
assignment of the note carries the mortgage with it, while an
assignment of the latter alone is a nullity."  <u>Id</u>.  Indeed,
"[a]ll the authorities agree that the debt is the principal thing
and the mortgage an accessory. ... The mortgage can have no
separate existence.  When the note is paid the mortgage expires."
<u>Id</u>. 83 U.S. at 275, 21 L. Ed at 315.  <u>See also</u>, <u>National Live</u>
<u>Stock Bank of Chicago v. First National Bank of Geneseo</u>, 203 U.S.
296, 306, 27 S. Ct. 79, 81, 51 L. Ed. 192 (1906)(same).

    These principles remain viable and are likewise embodied in

---

[11]   WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 308 3d ed. 1994)

the Restatement (Third) of Property: Mortgages, §5.4 (1997), which reads as follows:

### §5.4 Transfer of Mortgages and Obligations Secured by Mortgages

(a) A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise.

(b) Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise.

(c)  A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures.

Pennsylvania law was and is in accord.  See, e.g., In re North City Trust Co., 327 Pa. 356, 361, 194 A. 395, 398 (1937) ("[C]ollateral for a debt follows the obligation into the hands of the assignee thereof."); Beaver Trust Co. v. Morgan, 259 Pa. 567, 103 A. 367, 369 (1918)("A purchase of a debt is a purchase of all the securities for it, whether named or not at the time of the assignment, unless expressly agreed at the time they shall not pass."); Moore v. Cornell, 68 Pa. 320, 322 (1871)("A mortgage is discharged by payment, and an assignment of the debt transfers the right to the mortgage itself; for whatever will give the money secured by the mortgage, will carry the mortgaged premises along with it."); 13 Pa. C. S. §9203(g)("The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is

also attachment of a security interest in the security interest, mortgage or other lien."). <u>See also</u>, <u>Russel's Appeal</u>, 15 Pa. 319, 321, 322 (1950)("Even, although a conveyance be absolute in its terms, if it is intended by the parties to be a mere security for the payment of a debt, it is a mortgage. ... An article of agreement for the sale of land, accompanied by delivery of possession and payment of part of the purchase-money, is much more than a chose in action; it is an abiding interest in the land itself.").

This notion that notes and mortgages are legally inter-woven is further supported by the language employed by the Multistate Fixed Rate Uniform Instrument Note and Pennsylvania Mortgage forms[12] which appear to be currently utilized in most loan settlement transactions in which MERS is designated as the mortgagee.  Beginning with the Note form, at paragraph 10, the following verbiage appears:

> ... In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. ...

> The Mortgage, in turn, includes the following language in

---

[12]  We here refer specifically to Form Nos. 3200 and 3039 containing the further designation "Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT and UNIFORM INSTRUMENT WITH MERS attached as Exhibit "A1" to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment.

excerpted relevant parts:

**Definitions**

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** ...
     ...
**(E)** **"Note"** means the promissory note signed by Borrower and dated _____. ...

     ...

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

     ...

**Transfer of Rights in the Property**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in this _____ (County) of _____ which currently has the address of _____(Street), _ _____ (City), Pennsylvania _____(Zip Code) ("Property Address") ...

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by the Borrower in this Security Instrument, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those

24

interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    ...

UNIFORM COVENANTS.   Borrower and Lender covenant and agree as follows:

    ...

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**

If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. ...

    ...

**20.   Sale of Note; Change of Loan Servicer; Notice of Grievance.**   The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a

sale of the Note.  If there is a change of the Loan
Servicer, Borrower will be given written notice of the
change which will state the name and address of the new Loan
Servicer, the address to which payments should be made and
any other information RESPA requires in connection with a
notice of transfer of servicing. If the Note is sold and
thereafter the Loan is serviced by a Loan Servicer other
than the purchaser of the Note, the mortgage loan servicing
obligations to Borrower will remain with the Loan Servicer
or be transferred to a successor Loan Servicer and are not
assumed by the Note purchaser unless otherwise provided by
the Note purchaser.

     ...

         (Emphasis in original)

It therefore appears obvious from all of the foregoing, that
whether effectuated via a writing or a mere "transfer of
possession" of a note, the result is the same by operation of law
- an interest in and/or title to the property which secures it
has been assigned and conveyed from one party to another under
Pennsylvania law.[13]  As to the requirement of a writing, 21 P.S.

---

    [13]  This is essentially the same conclusion which the U.S. District
Court for the Eastern District of Kentucky very recently reached in Higgins v.
BAC Home Loans Servicing, LP, Civ. A. No. 12-cv-183-KKC, 2014 U.S. Dist. LEXIS
43274 (E.D. KY March 31, 2014).  While the Higgins case obviously required
construction of Kentucky law, specifically, KRS 382.360(3), the similarities
between that case and this one are striking given the direction contained in
the Kentucky statute - "[when a mortgage is assigned to another person, the
assignee shall file the assignment for recording with the county clerk within
thirty days of the assignment..." Thus the Court in Higgins framed the issue
there presented as "whether, under Kentucky law, when a MERS member assigns a
promissory note to another MERS member, that note assignment effects an
assignment of the mortgage that must be recorded." 2014 U.S. Dist. LEXIS at
*7.  And, recognizing that a note assignment may not be a physical document
since a note can be assigned simply by delivery to the assignee, the Court
concluded: "Thus where a secured note is assigned by delivering the note to
the assignee, the assignment of the mortgage that occurs by operation of law
should be recorded as provided in Kentucky's recording statutes." Id, at *21-
*22.

§623-1[14] is crystal clear: "Hereafter no assignment of any mortgage shall be entered of record in any county of the second class, unless such assignment shall be in writing, and acknowledged by the assignor or assignors before an officer or person duly authorized to take such acknowledgments." Accordingly, in answer to Defendants' question No. 2 as formulated in its motion papers, we now hereby find that the Pennsylvania Recording Act does in fact require the transfer of secured debt to first be documented in a form suitable for recording and then recorded in the land records because it creates in the transferee an equitable interest in the mortgage.[15]

    We endeavor now to answer Defendants' first and third

---

[14]   Statutes which apply to the same persons or things or to the same class of persons or things are in *pari materia* and should be construed together if possible as one statute.  1 Pa. C.S. §1932(a), (b); <u>Holland v. Marcy</u>, 584 Pa. 195, 206, 883 A.2d 449, 456 (2005).  <u>See also</u>, <u>Roberts v. Estate of Purnsley</u>, 1998 PA Super. LEXIS 2869, 718 A.2d 837, 841 (1998)("we adopt the theory that sections 351 and 444 of Title 21 must be read together.")

[15]   We believe this conclusion is further supported by the language of 21 P.S. §444, which provides in relevant part:

    All deeds and conveyances, which, from and after the passage of this act, shall be made and executed within this commonwealth of or concerning any lands, tenements or hereditaments in this commonwealth, *or whereby the title to the same may be in any way affected in law or equity*, shall be acknowledged by the grantor, or grantors, *bargainor or bargainors*, or proved by one or more of the subscribing witnesses thereto, before one of the judges of the supreme court or before one of the judges of the court of common pleas, or recorder of deeds, prothonotary, or clerk of any court of record, justice of the peace, or notary public of the county wherein said conveyed lands lie, and shall be recorded in the office for the recording of deeds where such lands, tenements or hereditaments are lying and being, within ninety days after the execution of such deeds or conveyance... (emphasis supplied).

questions and to confront what is perhaps the most challenging issue in this case: whether the MERS Defendants have been the transferor or transferee of unrecorded secured debt and if not, whether they are the proper parties who are subject to the mandates contained in the recording statutes.

E.  MERS as "Nominee"

The MERS Defendants have repeatedly taken the position that, in commencing the instant action, Plaintiffs sued the wrong parties because "MERS has not and does not negotiate or transfer promissory notes secured by mortgages recorded in Montgomery County, Pennsylvania."  (MERS' Memorandum of Law in Support of Their Motion for Summary Judgment, at p. 44).  More particularly, MERS argues:

> But there is no circumstance and no amount of wild speculation that could lead the Court to conclude that Section 351 mandates that a person or entity who did not buy the note, did not sell the note, and was not in any way involved with the transfer of the note, either as an assignor or as an assignee, is the person or entity that Section 351 mandates is responsible for documenting and then recording note transfers or other changes in ownership of debt.

(MERS' Memo of Law in Support of Motion for Summary Judgment at p. 45).

At first blush, this argument appears compelling.  However, now that it is clear that transfer of the note by operation of law also transfers the mortgage, the argument loses much of its original luster.  What's more, as recited in the MERS Defendants'

28

Memorandum of Law in Support of Their Motion for Summary Judgment at page 10:

> Defendants are MERSCORP Holdings, Inc. ("MERSCORP") and Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a wholly owned subsidiary of MERSCORP. MERSCORP operates the MERS ® system and membership in the MERS ® System and members are governed by the MERS ® System Rules of Membership. **It is MERS that serves as the mortgagee of record in the public land records as the "nominee" for a lender (noteholder) and its successors and assigns.** (Emphasis added)

And, under MERS Rule 8, Section 2(a),[16]

> If a Member chooses to conduct foreclosures in the name of Mortgage Electronic Registration Systems, Inc., the note must be endorsed in blank and in possession of one of the Member's MERS certifying officers. If the investor so allows, then MERS can be designated as the note-holder.

Thus, in apparent contradiction to its argument, MERS at least initially acknowledges that it in fact *is* "involved with the transfer of the note" by virtue of its service as the mortgagee of record as the nominee for a lender/noteholder and its successors and assigns and that when required to facilitate a foreclosure, MERS itself can become a "note-holder."

---

[16] Attached as Exhibit "A15" to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Partial Summary Judgment.  See also, Exhibit "A16" to Plaintiff's Memorandum, Deposition testimony of R.K. Arnold, in Trent v. MERS, Case No. 3:06CV-374-J-32HTS in the U.S. District Court for the Middle District of Florida, Jacksonville Division, at p. 67, 76-77, 81-82, 112-113 on 9/25/06; Plaintiff's Exhibit "A17," Deposition testimony of William C. Hultman in Henderson v. MERS, Case No. CV 2008-900805 in the Circuit Court of Montgomery County, AL, dated 11/11/09, pp. 62-63, 108, 109-112, 114-116).  It does appear, however, that in March 2013 these rules were altered such that under the current procedure governing foreclosures, an assignment from MERS to the foreclosing party or whoever will be foreclosing must first be recorded in the public land records.  MERS no longer undertakes foreclosure proceedings in its own name.  (Hultman Deposition, Plaintiff's Memorandum, Exhibit "A13," at pp. 62-65).

The relationship between the MERS Defendants ("MERS") and its members is more particularly described by William C. Hultman, the Vice President of Legislative Affairs for MERSCORP and a former officer of MERS, in his Declaration which is attached to Defendants' Memorandum of Law in Support of Motion for Summary Judgment as Exhibit "A." According to Mr. Hultman,

> 6. In regard to the mortgage or security instrument, the borrower and lender contractually agree to designate MERS as the mortgagee (as the nominee for the lender and the lender's successors and assigns) such that legal title to the lender's (and its successors and assigns) secured interests in the property are held by MERS on behalf of subsequent transferees of the promissory note. MERS serves as the mortgagee of record on a mortgage, as the nominee (i.e., agent) for the lender and for the lender's successors and assigns, who are members of the MERS ® System.
>
> ...
>
> 9. From time to time, MERS assigns the MERS Mortgages. In such instances, MERS is the assignor of the MERS Mortgage, and it is a MERS Signing Officer who signs the assignment of the MERS Mortgage ("MERS Assignment of Mortgage"). Once the MERS Assignment of Mortgage is duly executed and delivered, the MERS Assignment of Mortgage is, as required by the MERS ® System rules, recorded in the public, local land records, and any fees imposed for recording the MERS Assignment of Mortgage are paid.
>
> ...
>
> 11. ... MERS's only role is and was to serve as the mortgagee on the mortgage – as the nominee (or in the stead) of the lender and the lender's successors and assigns, who are members of the MERS ® System.
>
> ...
>
> 14. When the transfer or sale of the debt or promissory note involves a MERS ® System member, MERS remains as the mortgagee of record and continues to act as the mortgagee as the nominee for the purchaser (who is the beneficial owner

30

of the debt or note), who is then the lender's successor or
assign.  The MERS Mortgage is not assigned because MERS
remains the mortgagee as the nominee for purchaser.

(Hultman Declaration, Exhibit "A," at pp. 3-4, 5). See also,

Deposition of William C. Hultman of October 18, 2013, at p. 65-

66, annexed to Plaintiff's Memorandum of Law in Opposition to

Defendants' Motion for Summary Judgment and in Support of Cross-

Motion for Summary Judgment as Exhibit "A13").

Therefore according also to Mr. Hultman, MERS is both named

as the mortgagee *and* acts as agent for the lenders – not only the

lender which originates the loan to the borrower, but also those

lenders to whom the note is ultimately sold and transferred. It

is MERS that "from time to time" will assign and record the

mortgages over which it has charge in the public local land

records and ensure that any associated fees therefor are paid.

See also, Plaintiff's Exhibit "A10," MERS' System Rules of

Membership, Section 10, p. 45).  Clearly then, MERS *is* involved

with the transfer of the note and mortgage and we find, is an

appropriate party to this action.

We likewise reject the proposition that MERS is not subject

to liability because it is only an agent for its member-lenders.

Indeed, as a general matter, an "agent" is a "person authorized

by another (principal) to act for or in place of him; one

intrusted with another's business."  BLACK'S LAW DICTIONARY 63

(6th ed. 1990).  An agent holds the power to alter the legal

relations between the principal and third persons.  Tribune-Review Publishing Co. v. Westmoreland County Housing Authority, 574 Pa. 661, 675, 833 A.2d 112, 120 (2003).  An agency relationship arises when the following basic elements coalesce: there is a manifestation by the principal that the agent shall act for him, the agent accepts the undertaking, and the parties understand that the principal is to be in control of the undertaking.  V-Tech Services, Inc. v. Street, 2013 PA Super. 166, 72 A.3d 270, 278 (2013)(quoting Walton v. Robert Wood Johnson University Hospital, 2013 PA Super. 108, 66 A.2d 782, 787 (2013)).  The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence.  Id. (quoting Id.).

It is a basic tenet of agency law that an individual acting as an agent for a disclosed principal is not personally liable on a contract between the principal and a third party unless the agent specifically agrees to assume liability.  Azarchi-Steinhauser v. Protective Life Insurance Co., 629 F. Supp. 2d 495, 499-500 (E.D. Pa. 2009)(quoting Vernon D. Cox & Co. v. Giles, 267 Pa. Super. 411, 406 A.2d 1107, 1110 (1979).  Instead, the principal is liable for and bound by any acts that the agent performs with actual or implied authority from the principal that are within the scope of the agent's employment.  Id.  However, an authorized agent who enters into a contract on behalf of a

principal without disclosing that it is acting for the principal,
is personally liable on the contract. Burton v. Boland, 330 Pa.
Super. 444, 446, 489 A.2d 243, 245 (1985)(citing Revere Press,
Inc. v. Blumberg, 431 Pa. 370, 246 A.2d 407 (1968) and Dwyer v.
Rothman, 288 Pa. Super. 256, 431 A.2d 1035 (1981)). See also,
Strawbridge & Clothier v. Garment Manufacturers, Inc., 189 Pa.
Super. 43, 46, 149 A.2d 471, 472 (1959)("An agent for undisclosed
principals bears the legal consequences of assuming liability for
those undertakings which his principals would have undertaken,
had he made a disclosure."); Pennsylvania Railway Co. v.
Rothstein, 116 Pa. Super. 156, 161, 176 A.2d 861, 862 (1935)("It
is an elemental principle of agency that to relieve himself from
liability, an agent in dealing with a third party must not only
disclose the fact of the agency, but also the name of his
principal.").

As per Mr. Hultman,

3.   MERSCORP maintains a database of the loans registered on
the MERS ® System.  The information on the database tracks
the beneficial interests in, and the servicing rights to,
the loans registered on and by the members of the MERS ®
System.  It is the MERS ® System members who are responsible
for and who report the transactions regarding the registered
loans by inputting the data regarding the beneficial
interests in, and servicing rights to, the members'
particular loans registered on the MERS ® System.  For
example, if there is a transfer of the beneficial interests
of a loan as a result of a promissory note being
transferred, it is the MERS ® System member (or the MERS ®
System member who is the servicer of the loan for the
transferee of those beneficial interests) that reports the
transfer of beneficial interests by inputting the data
reflecting the transfer onto the MERS ® System database.

33

> Neither MERS nor MERSCORP is involved in any way in the transfer, sale, or purchase of any promissory notes, and neither MERS nor MERSCORP is involved in reporting the transfer, sale, or purchase of any promissory notes by a MERS ® System member to another MERS ® System member, or by a MERS ® System member to one who is not a MERS ® System member.

(Hultman Declaration, at pp. 3-4).

Hence as Mr. Hultman's declaration attests, the identities of the lenders for whom MERS is acting as agent are only revealed to other MERS members *by* MERS members, as "neither MERS nor MERSCORP is involved in reporting the transfer, sale or purchase of any promissory notes" by one member to another nor to anyone who is not a member.  (See also, Exhibit "A20" to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Cross Motion for Summary Judgment, Deposition Testimony of R.K. Arnold in Henderson v. MERS, Case No. CV 2008-900805 in the Circuit Court of Montgomery County, AL, dated 9/25/09, at p. 112, lines 10-12: "The members utilize the [MERS] system to track the note.").  That the identities of the lenders/note holders for whom MERS is ostensibly acting as agent are likewise inaccessible to licensed title agents and consumers has also been attested.  (See, Plaintiff's Exhibits "B," p.5, "G," pp. 6-7 and "H," p. 6).

From this we conclude that ample evidence exists to support the argument that MERS may alternatively be held responsible as an undisclosed agent of the lenders for whom it was acting as

"nominee."  Accordingly, we now hold that the MERS Defendants are proper parties who may be liable for and subject to the mandates of the Pennsylvania Recording Statutes in general and Section 351 in particular.  Defendants' motion for summary judgment is therefore denied as to Count I of the Complaint.

F.  *Plaintiff's Claims for Unjust Enrichment and Quiet Title*

Defendants also move for summary judgment in their favor on Plaintiff's causes of action for unjust enrichment and to quiet title,[17] asserting as the reasons therefor that Plaintiff has failed to prove the essential elements of each.  We note at the outset that to survive a summary judgment motion, the non-moving party is not required to *prove* its case, although it must present sufficient evidence on which a jury could reasonably find in its favor.  See, e.g., Jakimas, and Kaucher, both supra.  After reviewing the evidentiary materials in the record of this matter in the light most favorable to the plaintiff, we find that it has indeed mustered sufficient evidence to proceed to trial.

Pursuant to Pa. R. C. P. 1061(b)(3), an action to quiet title may be brought to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed

---

[17]  We note that Defendants re-raise their previously-addressed claim that there is no private right of action to enforce §351 and again challenge the appropriateness of permitting Plaintiff to proceed under a quiet title theory.  In the absence of a showing of extraordinary circumstances and in view of our previous rulings on this point, we reiterate that we see no need to reconsider those rulings as per the rule of the case doctrine.

affecting any right, lien, title or interest in land.  Kean v.
Forman, 2000 PA Super. 141, 752 A.2d 906, 908 (2000), *appeal
denied*, 564 Pa. 712, 764 A.2d 1070 (2000).  Rule 1061 was
intended to be liberally construed.  Brennan v. Shore Brothers,
Inc., 380 Pa. 283, 286, 110 A.2d 401, 402 (1955).

In our Memorandum Opinion of October 19, 2012, we held that
Plaintiff had sufficiently pled a quiet title claim by alleging
that she was a "party in any manner interested in the assignment
- *i.e.* conveyance - of mortgages recorded in the name of MERS as
nominee," and that she had pled "a pecuniary interest which is
affected by whether the mortgage assignments which MERS tracks
are recorded."  See, 904 F. Supp. 2d at 451.  The evidentiary
materials produced by Plaintiff in opposition to Defendants'
Motion for Summary Judgment include, among other things, a
statewide summary from the Pennsylvania Department of Revenue
showing the total number of instruments (deeds, mortgages and
other writs) recorded in each county Recorder of Deeds office and
the amounts collected in recording fees for the 2011 calendar
year and a survey prepared by the Philadelphia Department of
Records for the period between 2000 and 2012 of the number of
MERS and non-MERS recorded documents, as well as a number of
Affidavits from attorneys and former attorneys from Community
Legal Services, the Pennsylvania Legal Aid Network, and the
Housing Alliance of Pennsylvania.  (See, Plaintiff's Exhibits

"B," "C," "D," "E" and "F").  As these Exhibits demonstrate, over
the last twelve years, the number of documents recorded by MERS
has steadily increased, while the number of documents recorded by
others has steadily decreased.  There has, in turn, been a
corresponding decrease in the amount of recording fees collected
by the county Recorders of Deeds.  Inasmuch as Community Legal
Services, the Legal Aid Network and the Housing Alliance receive
much of their funding and financial support from the collection
of, *inter alia*, fees paid to the Recorders of Deeds offices, they
too have suffered monetary injury.

In addition, Plaintiff has produced reports from two of its
proposed expert witnesses with experience in forensic analysis of
chain of title issues and real estate law - Marie T. McDonnell
and Charles W. Proctor, III.  Ms. McDonnell reported on her
analysis of a MERS mortgage for a residential property in
Montgomery County which was originated with Countrywide Home
Loans, Inc. in June, 2005, was securitized in late August, 2005,
sold at least three times and foreclosed in March, 2013.  (See,
Plaintiff's Exhibit "G," pp. 3-5).  Throughout the process, Ms.
McDonnell found that there were five missing assignments that
should have been recorded with the Montgomery County Recorder of
Deeds, that the MERS Milestones data was incomplete and in
contradiction to the securitization deal documents, and that
title to the property had been corrupted by MERS' failure to

record a complete chain of title.  (Exhibit "G," p.7).

In his Declaration, Mr. Proctor attests that licensed title agents have no access to the information in the bar codes which MERS adds to every document that it records or to the MERS data base of exchanges, sales and assignments that MERS facilitates for the benefit of its customers/members.  This means that title searchers and consumers are denied the ability to ascertain who currently owns the note secured by a MERS mortgage and that neither the mortgagor nor the courts can ascertain the chain of events or the validity of a transaction.  This results, according to Mr. Proctor, in an erosion of Pennsylvania's land records and the inability to evaluate the marketability of title and credit worthiness of the consumer.  (See, Plaintiff's Exhibit "H," pp. 6-7).

Plaintiff Becker herself also testified that it is the obligation of the Recorders of Deeds to make sure that the chain of title of properties in their county is clear and complete. (See, Plaintiff's Exhibit "A9," Deposition of Nancy Becker dated July 17, 2013, p. 48).  Indeed, the Pennsylvania Superior Court has found that "the primary duty of the recorder of deeds is to serve the public by receiving and duly recording any recordable instruments as to serve the future necessities of the law," and that "as the custodian of the county deed books, the recorder of deeds is obligated to protect the public in preserving the

38

integrity of the official records of his or her office."
Schaeffer v. Frey, 403 Pa. Super. 560, 567-568, 589 A.2d 752, 756
(1991)(*internal citations omitted).* However, over the past
several years, a number of residents who were facing foreclosure
didn't know who owned their mortgage or to whom they should be
making their mortgage payments. (Id., 66). Plaintiff attributes
this to the fact that MERS is not recording all of the note
assignments with the result that not only is there a loss in
revenue, but also the land title records are incomplete to the
public. (Id., 65-68, 176-177).

Finally, Plaintiff also testified that based on a forensic
audit which revealed that a MERS-affiliated mortgage was
transferred on average between 4 and 12 times, she conservatively
estimates that Montgomery County alone has lost $15.7 million in
recording fees. (Id., 178-180). Because we find that all of
this evidence is sufficient to demonstrate that a genuine issue
of material fact exists with respect to Plaintiff's entitlement
to quiet title relief, Defendants' motion for the entry of
judgment in their favor as a matter of law on this claim is also
denied.

We reach the same conclusion with regard to Plaintiff's
unjust enrichment claim. A cause of action for unjust enrichment
is a claim by which the plaintiff seeks restitution for benefits
conferred on and retained by a defendant who offered no

compensation in circumstances where compensation was reasonably expected.  White v. Conestoga Title Insurance Co., 617 Pa. 498, 504, 53 A.3d 720, 723 (2012).  A showing of unjust enrichment requires a demonstration that: (1) a benefit was conferred on the defendant; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under circumstances that it would be inequitable for defendant to retain the benefit without payment to the plaintiff.  EBC, Inc. v. Clark Building Systems, Inc., 618 F.3d 253, 273 (3d Cir. 2010); Durst v. Milroy General Contracting, 2012 PA Super. 179, 52 A.3d 357, 360 (2012). Here, Plaintiff proffers the videotaped deposition testimony of its former President and CEO, R.K. Arnold in Henderson v. Merscorp, Inc., et. al., a similar action before the Circuit Court for Montgomery County, Alabama:

> Q.    ... Is it your company's intention to supplement or assist the public land records of the several states with the MERS system to make it more clear about who owns what?
>
> A.    No.
>
> Q.    Is it your company's intent to supplant the mortgage land records of various states with its system?
>
> A.    No.  We layer it on top is the way to think of it.
>
> Q.    When you say layer it on top, explain that, please.
>
> A.    Well, the MERS system couldn't exist if the recording system didn't exist.
>
> Q.    But the recording system can exist without MERS?
>
> A.    Certainly.  So we are the mortgagee of record, and

> there has to be a place for us to establish that.  And
> then we track the servicer.

(See, Plaintiff's Exhibit "A20," 111-112).  This testimony is, we find, essentially tantamount to an admission that by maintaining the recording system in Pennsylvania, the county recorders of deeds confer a benefit upon defendants which is in fact appreciated by defendants.  Because Defendants do not pay any fees when a note is transferred between its membership fee-paying members, we find that a genuine issue of material fact exists as to whether it would be unjust to allow Defendants to retain the benefits conferred on them without paying Plaintiff and the class whom she represents therefor.  Consequently, Defendants' motion for summary judgment as to Count III of the Complaint is also denied.

*G.  Plaintiff's Cross Motion for Partial Summary Judgment*

In addition to opposing Defendants' Motion for Summary Judgment, Plaintiff also seeks the entry of partial judgment in her favor as a matter of law pursuant to Count IV of her Complaint and asserts that this Court should now enter an order declaring that Defendants' past and present failures to record note assignments among its members constitutes a violation of Section 351 and that Defendants have been unjustly enriched by their actions.

Under the Declaratory Judgment Act, 28 U.S.C. §2201,

(a) In a case of actual controversy within its jurisdiction,

41

> ... any court of the United States, upon the filing of an
> appropriate pleading, may declare the rights and other legal
> relations of any interested party seeking such declaration,
> whether or not further relief is or could be sought.  Any
> such declaration shall have the force and effect of a final
> judgment or decree and shall be reviewable as such.

This language has been said to "place a remedial arrow in the
district court's quiver," and to confer "a unique and substantial
discretion on federal courts to determine whether to declare
litigants' rights." Reifer v. Westport Insurance Corp., No. 13-
2880, 2014 U.S. App. LEXIS 8014 *24 (3d Cir. Apr. 29, 2014)
(quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286, 288, 115
S. Ct. 2137, 132 L. Ed. 2d 214 (1995)).  Generally, the judgment
in a suit for declaratory judgment must be responsive to the
pleadings and issues presented. Westport Insurance Corp. v.
Bayer, 284 F.3d 489, 499 (3d Cir. 2002).  Indeed, "[w]hen all is
said and done," the Supreme Court has concluded, "the propriety
of declaratory relief in a particular case will depend upon a
circumspect sense of its fitness informed by the teachings and
experience concerning the functions and extent of federal
judicial power." Wilton, 515 U.S. at 287, 115 S. Ct. at 2143.  A
declaratory judgment action is appropriate when the declaration
will settle the question presented and terminate the entire
controversy - courts are to avoid using declaratory judgment to
make abstract determinations or to try the controversy in
piecemeal fashion. Pennsylvania Video Operators v. United
States, 731 F. Supp. 717, 719 (W.D. Pa. 1990), *aff'd w/o opinion*,

919 F. 2d 136 (3d Cir. 1990)(citing <u>Maryland Casualty Co. v.</u>
<u>Rosen</u>, 445 F.2d 1012 (2d Cir. 1971) and <u>Rowland v. Tarr</u>, 378 F.
Supp. 766, 769 (E.D. Pa. 1974)).

Over the years, the Third Circuit has enumerated the
following factors for district courts to consider when exercising
Declaratory Judgment Act discretion.  These are:

> (1) the likelihood that a federal court declaration will
> resolve the uncertainty of obligation which gave rise to the
> controversy;

> (2) the convenience of the parties;

> (3) the public interest in settlement of the uncertainty of
> the obligation; and

> (4) the availability and relative convenience of other
> remedies.

<u>Reifer v. Westport Insurance Co.</u>, 2014 U.S. App. LEXIS at *28
(citing <u>United States v. Pa. Dep't of Envtl. Res.</u>, 923 F.2d 1071,
1075 (3d Cir. 1991), <u>Terra Nova Ins. Co. v. 900 Bar, Inc.</u>, 887
F.2d 1213, 1224 (3d Cir. 1989) and <u>Bituminous Coal Operators'</u>
<u>Assoc. v. Int'l Union, United Mine Workers of America</u>, 585 F.2d
586, 596 (3d Cir. 1975), *abrogated on other grounds by* <u>Carbon</u>
<u>Fuel Co. v. United Mine Workers of Am.</u>, 444 U.S. 212, 100 S. Ct.
410, 62 L. Ed. 2d 394 (1979)).

In this matter and in light of the rationale outlined in the
preceding sections of this opinion, we must concur with
Plaintiff's assertion that declaratory judgment is now properly
entered in her favor with regard to Count I of the Complaint such

that we now formally declare that the assignment or transfer of a promissory note secured by a mortgage on real estate is, in Pennsylvania, equivalent to a mortgage assignment.  We further declare that Defendants' failure to create and record documents evincing the transfers of promissory notes secured by mortgages on real estate in the Commonwealth of Pennsylvania is, was and will in the future be, in violation of the Pennsylvania Recording law - most particularly 21 P.S. §§351.[18]  Plaintiff's motion for partial summary judgment is therefore granted as to Defendants' liability under Count I with the issue of the extent of the damages as a consequence of these violations to be addressed at the trial of this matter.

We must decline to enter summary judgment in Plaintiff's favor as to Count III however.  To be sure, while there clearly is evidence that Defendants may have been unjustly enriched as a result of the conduct complained of, we do not find the record to have been sufficiently developed on this claim to allow the entry of judgment as a matter of law or to make an award of damages at this time.  Therefore, we leave this claim to be further and finally thrashed out at trial.  So saying, Plaintiff's motion for

---

[18]   Although not specifically pled in Plaintiff's complaint, for the reasons given previously in this Memorandum Opinion, Sections 444, 621 and 623-1 appear to also have been violated.

44

partial summary judgment shall be granted in part.[19]

### Conclusion

For all of the reasons set forth above, the Defendants' Motion for Summary Judgment shall be denied in its entirety and the Plaintiff's Cross-Motion for Partial Summary Judgment shall be granted in part.  An appropriate order follows.

---

[19]   While it is not entirely clear from the briefing whether Plaintiff is likewise seeking the entry of summary judgment in the form of permanent injunctive relief, we would deny that relief as well.  A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  Ebay Inc. v. Mercexchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed.2d 641 (2006).  Specifically, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not disserved by a permanent injunction.  Id. Indeed, among the remedies sought by Plaintiff is an award of monetary damages.  So saying, we cannot find that judgment would be properly now entered in her favor on this equitable claim.